UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

In Re:

FEATURE REALTY LITIGATION,   )
                             )  No. CV-05-333-AAM
                             )
                             )
                             )  **ORDER GRANTING**
                             )  **MOTION FOR PARTIAL**
                             )  **SUMMARY JUDGMENT,**
                             )  **IN PART**
                             )
_____)

THIS DOCUMENT RELATES TO:

CV-05-165-AAM; CV-05-222-AAM

**BEFORE THE COURT** is the motion of Defendant United States Fidelity & Guaranty (USF&G) "for partial summary judgment regarding no coverage for intentional acts." (Ct. Rec. 20).

**I. BACKGROUND**

Case no. 95-2-03773-3 was filed by Feature Realty ("Feature") in Spokane County Superior Court in July 1995. Defendants were the City of Spokane ("City") and various city employees. Feature alleged the City had wrongfully withheld a grading permit. Feature and the City eventually reached a settlement agreement following a decision by the Washington Supreme Court in *Mission Springs v. City of Spokane*, 134 Wn.2d 947, 954 P.2d 250 (1998). The City, however, later repudiated the settlement agreement on the basis that the City Council had not approved the settlement in an open, public meeting.

**ORDER GRANTING MOTION FOR**
**PARTIAL SUMMARY JUDGMENT, IN PART- 1**

Feature then filed another action against the City in Spokane County Superior Court (No. 00-2-06812-8) seeking to enforce the settlement agreement, specifically an arbitration requirement. That action was removed to this court on the basis of diversity of citizenship (CS-00-444-AAM). The undersigned denied Feature's motion to remand the case to state court and ultimately ruled the City had violated the Open Public Meetings Act (OPMA), rendering the settlement agreement null and void. The Ninth Circuit Court of Appeals affirmed that decision. *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082 (9th Cir. 2003). In this court's decision, the undersigned indicated that Feature could attempt to reopen Spokane County Superior Court action 95-2-03773-3 because of the void settlement agreement. Feature moved to reopen and the Spokane County Superior Court granted the motion

During the pendency of the aforementioned appeal to the Ninth Circuit, Feature commenced yet another action against the City in Spokane County Superior Court, case no. 03-2-00670-4. In this action, Feature alleged the City had improperly delayed approval of a plat amendment. The City removed the action to federal court and on May 6, 2003, the Honorable Justin L. Quackenbush denied Feature's motion to remand because federal question jurisdiction existed by virtue of a 42 U.S.C. §1983 claim asserted by Feature. Judge Quackenbush later granted Feature's motion to file a "Second Amended Complaint" which dropped the §1983 claim. He then remanded the action to Spokane County Superior Court because no federal court jurisdiction was alleged in the "Second Amended Complaint."

Following remand, Feature filed a "Third Amended Complaint" in Spokane County Superior Court in consolidated cases 95-2-03773-3 and 03-2-00670-4. This "Third Amended Complaint" alleged three causes of action, one under 42 U.S.C. §1983, one under RCW 64.40, and one under the common law tort theory of intentional interference with business expectancy. (Ex. 1 to Patterson Declaration, Ct. Rec. 22).

With regard to the cause of action under RCW 64.40, the "Third Amended Complaint" alleged:

> Throughout the application process, the City acted arbitrarily, capriciously, and unlawfully to delay processing of plaintiff's application [for a plat amendment], including intentionally stalling work on the application and urging the Hearings Examiner that the

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT, IN PART- 2**

>application be treated as a new and more onerous application, not merely one for an amendment.

(Paragraph 21 of "Third Amended Complaint" at pp. 5-6).

On April 18, 2005, the parties reached a settlement agreement with regard to the consolidated Spokane County Superior Court cases. (Ex. 2 to Patterson Declaration). The terms of the settlement were: 1) The City stipulated to a judgment in favor of Feature and against the City in the amount of $5.5 million; 2) The City assigned its insurance rights under the policies issued by Genesis Insurance Company (Genesis) and United States Fidelity & Guaranty Company (USF&G) as those policies apply to the stipulated judgment; 3) Feature agreed not to execute on the stipulated judgment, except to the extent of the City's insurance proceeds as assigned to Feature; and 4) Feature received $600,000 from another of the City's liability insurers, Lexington Insurance Company, and that company assigned to Feature its equitable contribution claims against Genesis and USF&G.

In May 2005, Feature filed motions in Spokane County Superior Court to determine the reasonableness of the covenant judgment amount; for entry of judgment against the City; to dismiss individuals named as defendants in 03-2-00670-4; and a motion to amend the "Third Amended Complaint" to name two additional defendants, Genesis and USF&G, and plead four causes of action against them, including equitable indemnity, recovery under the Consumer Protection Act, breach of insurance contracts, and bad faith in handling the insurance claims. These motions were served on Genesis and USF&G, along with a proposed judgment against the City and a proposed "Fourth Amended Complaint" adding Genesis and USF&G as defendants. A hearing was held on June 10, 2005 in Spokane County Superior Court in which counsel for USF&G and Genesis appeared, although USF&G and Genesis were denied leave to formally intervene in the matter. The court found the covenant judgment reasonable, entered judgment against the City, and granted Feature leave to file the "Fourth Amended Complaint."

The judgment entered by the Spokane County Superior Court "("Covenant Judgment Pursuant To Written Stipulation" found at Ex. A to Cordell Declaration, Ct. Rec. 38) recited that satisfaction of the award of $5.5. million against the City would "be solely by recourse against Genesis and USF&G pursuant to the assignment of rights by the Judgment Debtor [City of

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT, IN PART- 3**

Spokane] to the Judgment Creditor [Feature Realty] . . . ."  Furthermore, the judgment stated:

> The parties have agreed that this Judgment determines only the liability of the Judgment Debtor for any liability it may have for the alleged wrongful acts of Judgment Debtor from and after May 19, 1999, related to the alleged delays in the processing of the application for a Plat Amendment for the Canyon Bluffs PUD, formerly known as the Mission Springs PUD . . . .

The aforementioned "Fourth Amended Complaint" was then removed to this court as CV-05-222-AAM based on diversity of citizenship.  Previous to this removal, and indeed previous to the Spokane County Superior Court granting Feature leave to file the "Fourth Amended Complaint," both USF&G and Genesis filed declaratory judgment actions in this court (CV-05-165-AAM filed by USF&G on June 1, 2005; CV-05-168-AAM filed by Genesis on June 2, 2005), seeking declarations that they were not obligated to pay anything to the defendants under the terms of their respective insurance policies with the City of Spokane.  05-165, 05-168 and 05-222 have been consolidated under a single case number (05-333).[1]

Section I(2)(h) of the relevant USF&G "Excess Public Officials And Employees Liability Policy" (Ex. 3 to Patterson Declaration) provides an exclusion of coverage for any claim or suit "[a]rising from willful violation of any statute, ordinance or regulation, committed by or with the knowledge or consent of any insured."  USF&G asserts that to the extent Feature's judgment against the City arises from the City's alleged violation of RCW 64.40, the exclusion precludes coverage.  Furthermore, to the extent the judgment arises from the City's alleged intentional interference with business expectancy, USF&G contends there is no coverage because Washington public policy prohibits insurance coverage for intentional acts.  USF&G says this public policy is an additional reason (in addition to the exclusion language in the insurance policy) why there is no coverage for an alleged violation of RCW 64.40.[2]  Accordingly, USF&G asks this court to declare as a matter of law that its policy provides no coverage for any intentional acts committed by the City of Spokane.

---

[1] Genesis subsequently settled all of the claims brought against it in 05-165 and 05-222, and the claims asserted by it in 05-168.  (Ct. Rec. 41).

[2] The parties agree that the 42 U.S.C. §1983 claim, pertaining to the 1995 denial of a grading permit, was not part of the judgment.

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT, IN PART- 4**

## II. DISCUSSION

### A. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

Statutory interpretation and interpretation of insurance policy language are questions of law for the court and therefore, appropriate for resolution on summary judgment. *State of Washington ex rel. Evergreen Freedom Foundation v. WEA*, 140 Wn.2d 615, 630-31, 999 P.2d 602 (2000)(interpreting statute as "a matter of law" and noting "[t]he objective of statutory interpretation is to execute the intent of the Legislature, which must be primarily determined from the language of the statute itself. When words in a statute are plain and unambiguous, this

Court is required to assume the Legislature meant what it said and apply the statute as written"); *Grange Insurance Company v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989)(interpretation of an insurance policy is a question of law).

### B. RCW 64.40

RCW 64.40.020 provides in relevant part:

> (1) Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency[3] which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by the law: PROVIDED, That the action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.
>
> . . . .
>
> (3) No cause of action is created for relief from unintentional procedural or ministerial errors of an agency.

Feature contends RCW 64.40.020 does not require proof that City officials acted "willfully" or with specific intent to harm Feature. Instead, says Feature, liability may be established on a showing of conduct that is negligent or reckless.

The insurance policy exclusion is unambiguous. There is no coverage "[a]rising from willful violation of any statute, ordinance or regulation, committed by or with the knowledge or consent of any insured." The question is whether the only violation of RCW 64.40 is a "willful" violation. RCW 64.40.020 refers to acts which are either arbitrary, capricious, unlawful, or exceed lawful authority. "The fact that the disjunctive 'or' is used in the first part of the statute shows that acting *either* arbitrarily and capriciously *or* unlawfully or in excess of lawful authority will create a cause of action." *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 112, 829 P.2d 746 (1992)(emphasis in original). "Arbitrary and capricious" acts are "willful" acts. *Brell v. City of Bremerton*, 80 Wn.2d 518, 526, 495 P.2d 1358 (1972)(defining "arbitrary and capricious" as involving "willful and unreasonable action without consideration,

---

[3] "Agency" means the State of Washington and any of its political subdivisions, including any city, town or county. RCW 64.40.010(1).

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT, IN PART- 6**

and [in] disregard of facts or circumstances"). With regard to acts which are "unlawful" or "exceed lawful authority," RCW 64.40.020(1) states that a final decision of an agency must be made "with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority." Feature asserts the "should reasonably have been known" language indicates that a negligent act can constitute a violation of the statute and notes that in *Lutheran Day Care*, 119 Wn.2d at 112, the Washington Supreme Court held that "[k]nowledge of unlawfulness is not required for a cause of action under RCW 64.40.020(1)."

Actually, what the Washington Supreme Court meant when it said that "[k]nowledge of unlawfulness is not required for a cause of action under RCW 64.40.020(1)" is that such knowledge is not required to establish a violation by virtue of "arbitrary and capricious" acts, "but is only required when the cause of action is based on conduct which is unlawful or exceeds lawful authority." *Id.* ("Here, appellant is basing its cause of action on arbitrary and capricious acts, and therefore, need not show knowledge of unlawfulness"). Furthermore, there was no express holding in *Lutheran Day Care* that negligent conduct is sufficient to constitute a violation of RCW 64.40.020(1) where the cause of action is based on conduct which is "unlawful or exceed[s] lawful authority." The other cases cited by Feature also do not hold that negligent conduct is sufficient under RCW 64.40. *King v. City of Seattle*, 84 Wn.2d 239, 240-41, 525 P.2d 228 (1974)(trial court awarded damages for city's alleged intentional and wrongful refusal to issue street use and building permits; refusal to issue those permits was "arbitrary and capricious and without justification in law"); *Rosen v. City of Tacoma*, 24 Wn.App. 735, 740-41, 603 P.2d 846 (1979)(city owed no specific duty to plaintiffs other than duty to handle building permits in a manner which was not arbitrary and capricious and therefore, plaintiff had no cause of action for negligence).   Indeed, there is not even any reference to RCW 64.40 in *King* and *Rosen* because RCW 64.40 did not exist until 1982. And finally, it bears noting that in at least one reported Washington case, (and in many unreported cases), common law negligence has specifically been pled as an alternative cause of action to RCW 64.40. See *West Coast, Inc. v.*

**ORDER GRANTING MOTION FOR**
**PARTIAL SUMMARY JUDGMENT, IN PART- 7**

*Snohomish County*, 104 Wn.App. 735, 741, 16 P.3d 30 (2000).[4]

In the absence of any case law holding that RCW 64.40.020 permits a cause of action for something less than intentional conduct, the question is whether any interpretation of the statute, specifically the language "should reasonably have been known to have been unlawful or in excess of lawful authority," permits a conclusion that negligent conduct is sufficient. Feature cites no authority for the proposition that this language makes any action taken pursuant to such "constructive knowledge" something less than intentional (i.e, negligent). In other words, Feature cites no authority that one who acts pursuant to constructive knowledge of illegality, acts negligently as opposed to intentionally.

Feature's position appears to be that only "actual knowledge" that an action is unlawful or in excess of lawful authority can make that action a "willful" violation of RCW 64.40.[5] As noted above, however, *Lutheran Day Care* recognizes that actual or constructive knowledge of unlawfulness is not necessary where the cause of action is based on "arbitrary and capricious" acts which case law has defined as "willful and unreasonable" acts. Furthermore, the United States Supreme Court has "consistently stated that willfulness for civil liability requires either knowledge **or** reckless disregard with respect to whether an action is unlawful." *Reynolds v. Hartford Financial Services Group, Inc.*, 435 F.3d 1081, 1098 (9th Cir. 2006), citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613 (1985); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 614, 113 S.Ct. 1701 (1993); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677 (1988); and *United States v. Illinois Cent. R.R. Co.*, 303 U.S. 239, 242-43, 58 S.Ct. 533 (1938)(emphasis added). "The [Supreme] Court's rule with respect to civil cases differs from its rule in criminal proceedings. In criminal cases, **actual knowledge** of illegality is required for a willful violation of a criminal statute." *Id*., citing *Bryan v. United*

---

[4] Feature did not plead common law negligence as a cause of action in its "Third Amended Complaint" against the City.

[5] This is evidenced by the statement in its surreply that "Feature strongly agrees that Mr. Kokot <u>should have known</u> that the City's 1999 fire safety standards should apply and that imposing the 2002 standard violated RCW §64.40." (Surreply, Ct. Rec. 45 at p. 6)(emphasis in original). According to Feature, this constructive knowledge establishes a violation of RCW 64.40, but it is not a "willful"/intentional violation.

**ORDER GRANTING MOTION FOR**
**PARTIAL SUMMARY JUDGMENT, IN PART- 8**

*States*, 524 U.S. 184, 191, 118 S.Ct. 1939 (1998); *Ratzlaf v. United States*, 510 U.S. 135, 149, 114 S.Ct. 655 (1994); and *Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604 (1991)(emphasis added). In *Reynolds*, the Ninth Circuit Court of Appeals held that a company which knowingly and intentionally performs an act that violates the Fair Credit Reporting Act (FCRA), either knowing that the action violates the rights of consumers or in reckless disregard of those rights, is liable for "willfully" violating consumers' rights. *Id*. at 1099.

A search of Washington case law reveals nothing to the contrary regarding interpretation of the term "willfully" as including "reckless disregard" in the civil context. In *Adkisson v. City of Seattle*, 42 Wn.2d 676, 258 P.2d 461 (1953), the Washington Supreme Court discussed "willful" and "wanton" misconduct, observing that while there were some differences, they belong in the same class:

> An act into which knowledge of danger and wilfulness enter is not negligence of any degree, but is wilful misconduct. As long as the element of inadvertence remains in conduct, it is not properly regarded as wilful. Wanton misconduct is positive in nature, while mere negligence is materially negative. A person properly chargeable with wanton misconduct is not simply one who is more careless than one who is merely negligent. **Wanton misconduct is such as puts the actor in the class with the wilful doer of wrong**.

*Id*. at 683 (emphasis added), citing 38 Am.Jur. 693, Negligence, §48.

Quoting from the same treatise (Am.Jur.), the court noted that "[t]o constitute wilful misconduct, there must be actual knowledge, **or that which the law deems to be the equivalent of actual knowledge**, of the peril to be apprehended, coupled with conscious failure to avert injury," while "[a] wanton act is one which is performed intentionally with a reckless indifference to injurious consequences probable to result therefrom." *Id*. at 684 (emphasis added). The court also quoted from an Alabama case, *Birmingham Southern R. Co. v. Powell*, 136 Ala. 232, 33 So. 875, 877 (1903), that "[t]his degree of recklessness, with a conscious knowledge of its probable harmful consequences, constitutes that wantonness, which, in law, **finds its equivalent, in point of responsibility, to willful or intentional wrong**." *Id*. at 685 (emphasis added).

Based on the foregoing authorities, this court concludes the constructive knowledge language of RCW 64.40.020, providing liability where a public agency "should reasonably have

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT, IN PART- 9**

. . . known" its action was unlawful or in excess of lawful authority, covers the "reckless disregard" situation and is no less a "willful" and "intentional" violation of the statute than action which the agency actually knows to be unlawful or in excess of lawful authority. The logical and legitimate purpose of this is to prevent an agency from using "ignorance of the law" as an excuse to escape liability for reckless conduct. See *Reynolds*, 435 F.3d at 1099 ("A company will not have acted in reckless disregard of . . . consumers' rights if it has diligently and in good faith attempted to fulfill its statutory obligations and to determine the correct legal meaning of the statute and had thereby come to a tenable, albeit erroneous, interpretation of the statute. In contrast, neither a deliberate failure to determine the extent of its obligations nor reliance on creative lawyering that provides indefensible answers will ordinarily be sufficient to avoid a conclusion that a company acted with willful disregard of FCRA's requirement"). A "reckless" violation of RCW 64.40.020 is a "willful" violation of that statute.

Support for interpreting RCW 64.40.020 as requiring nothing less than intentional conduct (including reckless conduct) is found in subsection (3) of the statute which provides that "[n]o cause of action is created for relief from unintentional procedural or ministerial errors of an agency." Of course, the converse of this is that there is a cause of action for an intentional procedural or ministerial error. Indeed, in *Lutheran Day Care*, the Washington Supreme Court stated that the language of subsection (3) "implies that a cause of action is created only for intentional ministerial errors." 119 Wn.2d at 103-04. The court interpreted RCW 64.40.020 so that liability for quasi-judicial and administrative acts is determined according to the "arbitrary, capricious or unlawful" standard of subsection (1), whereas liability for ministerial acts is determined according to the "intent" standard of subsection (3). *Id*. at 104.[6] The court found

---

[6] A quasi-judicial act refers to discretion of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature. *Black's Law Dictionary* (6th Ed. 1990) at p. 1245. It involves a policy decision. *Cox v. City of Lynnwood*, 72 Wn.App. 1, 11, 863 P.2d 578 (1993). The grant or denial of a conditional use permit is an example of a quasi-judicial act, according to *Lutheran Day Care*. 119 Wn.2d at 751. To the contrary, "ministerial" acts are not discretionary. Where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial. *City of Hoquiam v.*

**ORDER GRANTING MOTION FOR**
**PARTIAL SUMMARY JUDGMENT, IN PART- 10**

the statute "seems to require two different standards of conduct to establish liability for one act." *Id*.

Feature appears to concede that Spokane's denial of its application for a plat amendment involved a "ministerial act[7]," but nonetheless contends subsection (3) is of no significance because in *Mission Springs*, the Washington Supreme Court applied the "arbitrary, capricious or unlawful" standard of subsection (1) to "ministerial acts," specifically the "ministerial act" of refusing to issue a grading permit. 134 Wn.2d at 962. Feature asserts that this amounted to a *sub silento* reversal of the holding in *Lutheran Day Care* that liability for "ministerial acts" is determined according to the "intent" standard of subsection (3). According to Feature, pursuant to *Mission Springs*, the "ministerial act" of denying the application for a plat amendment falls within subsection (1), which Feature asserts makes the denial actionable for something less than intentional conduct on the part of the City of Spokane, by virtue of the constructive knowledge language ("should reasonably have been known to have been unlawful or in excess of lawful authority"). As discussed above, however, constructive knowledge that an action is unlawful or in excess of lawful authority does not make that action any less "willful" or "intentional."

Because there was a settlement and there was not a formal adjudication of the claims contained in Feature's "Third Amended Complaint," there are no findings by the Spokane County Superior Court concerning the nature of the City's conduct under RCW 64.40.020. Nonetheless, for reasons set forth above, any violation of RCW 64.40.020 required intentional conduct (including reckless conduct) on the part of the City. As such, Feature's contention that there is evidence of unintentional conduct by the City with regard to the processing of the plat

---

*Grays Harbor County*, 24 Wn.2d 533, 540, 166 P.2d 461 (1946). The issuance of a building permit is considered a ministerial act. *Lutheran Day Care*, 119 Wn.2d at 751. See also *Mission Springs*, 134 Wn.2d at 961 ("neither a grading permit, building permit, nor any other ministerial permit may be withheld at the discretion of a local official to allow time to undertake a further study").

[7] USF&G concurs it was a "ministerial act," noting that Spokane's Fire Appeals Board ruled that Spokane was bound by the water department's approval of Feature's plans in 1999 and therefore, that the fire department could not enforce its current safety standards. (Feature's Response Brief, Ct. Rec. 36, at pp. 12-13).

**ORDER GRANTING MOTION FOR**
**PARTIAL SUMMARY JUDGMENT, IN PART- 11**

1  amendment application is simply irrelevant.

2      Feature cites a couple of New York cases which have construed insurance policy
3  exclusions identical to the exclusion at issue in the case at bar. In *Cocchi v. National Union Fire*
4  *Insurance Company of Pittsburgh*, 156 A.D.2d 535, 548 N.Y.S.2d 804 (1989), the court found
5  the insurer had failed to establish that the allegations of the complaint against Mr. Cocchi fell
6  solely within the exclusions of the policy, including exclusion J, "[a]rising from willful violation
7  of any statute, ordinance or regulation, committed by or with the knowledge or consent of any
8  insured." According to the court:

> Nor does exclusion J serve to relieve the carrier of the duty to provide a defense. The very purpose of the policy is to protect village officials, including Cocchi, from claims against them alleging wrongful conduct. The carrier's interpretation would go a long way toward having this exclusion devour the coverage. The complaint in the underlying action against Cocchi does not exclusively allege that he engaged in a "willful violation" of any statute. Rather, the complaint pleads in the disjunctive, in asserting that Cocchi knew or should have known that his actions were illegal . . . . Accordingly, the character of Cocchi's actions must be determined by the fact finder in the underlying action, and he is entitled to summary judgment directing the carrier to provide a defense for him. In the event that it is determined in the underlying action that the plaintiff's conduct was not willful, the defendant must indemnify him for any liability imposed upon him in that underlying action.

*Id*. at 537-38.

    In *National Union Fire Insurance Company of Pittsburgh v. City of Oswego*, 295 A.2d
905, 744 N.Y.S.2d 266 (2002), the court reached a similar conclusion:

> We conclude, however, that it is at least arguable that exclusion J, which excludes coverage for any claim arising out of the willful violation of any statute, ordinance or regulation committed by or with the knowledge or consent of any insured, does not exclude coverage for the causes of action . . . alleging breach of various state and federal statutes. The complaint, although alleging that defendants' conduct was willful and intentional, also alleges that defendants' conduct in violating the statute was reckless. The allegations of reckless conduct fall within the policy coverage (citation omitted).

*Id*. at 906.

    Obviously, however, these New York cases did not involve RCW 64.40.020 which this
court has concluded permits nothing less than a "willful" violation, including a violation

**ORDER GRANTING MOTION FOR**
**PARTIAL SUMMARY JUDGMENT, IN PART- 12**

resulting from reckless conduct. As such, it does not matter if Feature has in fact pled negligent and/or reckless conduct on the part of the City of Spokane.

It is true that the USF&G policy contains what appears to be a rather expansive definition of "wrongful act[s]" for which the policy provides coverage. (Page 1 of "Excess Public Officials And Employees Liability Policy"). "Wrongful act" means:

> [A]ny actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by any insured, individually or collectively, including the "Public Entity" or any other insured while in the performance of its duties for such "Public Entity."

(Page 13 of Policy). To the extent this definition suggests coverage for an intentional wrongful act or omission (beyond negligence), it is not necessarily inconsistent with the exclusion for a claim or suit "arising from the willful violation of any statute, ordinance or regulation committed by or with the knowledge or consent of any insured." The exclusion is limited to "willful"/intentional violations of a statute, ordinance or regulation, such as RCW 64.40.020. The exclusion does not pertain to an intentional common law tort, such as intentional interference with business expectancy, and USF&G makes no argument to the contrary. Instead, as discussed *infra*, USF&G contends Washington public policy (not its insurance policy) precludes coverage for intentional common law torts.

**C. Washington Public Policy Re Insurance Coverage For Intentional Acts**

Citing *American Home Assurance Company v. Cohen*, 124 Wn.2d 865, 871, 881 P.2d 1001 (1994), USF&G contends that "[r]egardless of the policy language, public policy forbids liability insurance coverage for the intentional acts of an insured." In *Cohen*, the Washington Supreme Court said that "**[i]n general**, it is against public policy to insure against liability arising from the intentional infliction of injury on the person of another." *Id*. at 871, citing *Grange Insurance Company v. Brosseau*, 113 Wn.2d 91, 98, 776 P.2d 123 (1989)(emphasis added). In *Brosseau*, the court explained the rationale for the "general" rule as being that if an individual could purchase liability insurance coverage for his intentional infliction of injury on

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT, IN PART- 13**

the person or property of another, "an important disincentive to commission of intentional torts, the threat of a successful civil suit, would be removed." 113 Wn.2d at 98.

In *Fluke Corporation v. Hartford Accident & Indemnity Company*, 145 Wn.2d 137, 34 P.3d 809 (2001), however, the Washington Supreme Court held that liability coverage for malicious prosecution and punitive damages did not violate public policy.  The policy at issue in *Fluke* expressly insured against liability for malicious prosecution.  The court observed it had not "previously invalidated on public policy grounds any affirmative grant of coverage made by an insurer." *Id*. at 144.  The defendant (Hartford) could point to no statute or judicial decision suggesting Washington discountenanced the selling of Commercial General Liability (CGL) insurance for a number of intentional torts listed as covered in the policy, including not only malicious prosecution, but false arrest, wrongful entry or eviction, and libel or slander.  *Id*. at 144-45.  Hartford could "identify no public policy clearly expressed in Washington statutes or case law that would justify overriding the policy's explicit coverage for malicious prosecution." *Id*. at 145.  According to the court:

> We conclude that coverage for malicious prosecution does not violate public policy in Washington.  The insurance provision is clear and the type of coverage well-established, and the only Washington case that has considered such coverage accepted its validity.  The general statements in earlier cases about public policy and intentional torts simply do not provide strong precedent for finding that the marketing of this type of coverage should now be nullified as contrary to public policy.  The paramount public policy here is the commitment to upholding the plain language of contracts.  Notably, while the Hartford policy includes an exclusion under Coverage A for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured," it contains no language limiting Coverage B's explicit coverage for malicious prosecution.

*Id*. at 147.

USF&G points to no statute or judicial decision suggesting Washington has discountenanced the selling of an "Excess Public Officials And Employees Liability Policy" for certain intentional torts.  Instead, USF&G simply relies on the "general statements" and the "general rule" from earlier cases that it is against public policy to insure against liability arising from the intentional infliction of injury on the person of another.  It is true that the USF&G

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT, IN PART- 14**

policy at issue does not explicitly provide coverage for "intentional torts" and indeed, certain intentional torts are explicitly excluded, including false arrest and imprisonment, malicious prosecution, wrongful entry or eviction, and libel or slander.[8]   On the other hand, there is no explicit and express blanket prohibition of coverage for any and all intentional torts.  Hence, instead of relying on a policy exclusion to defeat coverage for Feature's claim of intentional interference with business expectancy, USF&G resorts to the "public policy" argument.

"Coverage A" of the insurance policy states USF&G "will pay 'ultimate net loss' on behalf of any insured . . . in excess of the 'self-insured retention' for **any civil claim** because of injury caused by a 'wrongful act' to which this insurance applies."  (Pg. 1 of Policy)(emphasis added).  "Coverage B" states USF&G "will indemnify the 'Public Entity' for 'ultimate net loss' in excess of the 'self-insured retention' for which the 'Public Entity' shall be required by law to indemnify any other insured for **any civil claim** made against such other insured because of injury caused by a 'wrongful act' to which this insurance applies."  (*Id.*)(emphasis added).  As noted above, "Wrongful Act" is expansively defined as:

> [A]ny actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by any insured, individually or collectively, including the "Public Entity" or any other insured while in the performance of its duties for such "Public Entity."

(Page 13 of Policy).

The fact "neglect" and "breach of duty" are presented as alternatives reasonably indicates that "wrongful acts" are not limited to unintentional torts (i.e., negligence).  Moreover, the use of the term "malfeasance" is significant.  "Malfeasance" has been defined as:

> Evil doing; ill conduct; the commission of some act which is **positively** unlawful; the doing of an act which is wholly wrongful and unlawful; the doing of an act which the person ought not to do at all; the doing of what one ought not to do; the performance of some act which ought not to be done; the unjust performance of some act which the party had no right, or which he contracted not to do.

---

[8] The policy provides an exclusion for "bodily injury," "property damage," "personal injury," or "advertising injury."  (Policy at p. 2).  Coverage for the aforementioned torts is excluded by way of the policy's definition of "personal injury."  (Policy at p. 12).

**ORDER GRANTING MOTION FOR**
**PARTIAL SUMMARY JUDGMENT, IN PART- 15**

*State v. Miller*, 32 Wn.2d 149, 152, 201 P.2d 136 (1948)(emphasis added).

In *Adkisson*, the Washington Supreme Court stated that "[w]anton misconduct is **positive** in nature, and negligence is materially **negative**" and "[w]anton misconduct is such as puts the actor in the class with the **willful** doer of wrong." 42 Wn.2d at 676, 682-83 (emphasis added). See also *Brown v. Underwriters At Lloyd's*, 53 Wn.2d 142, 153, 332 P.2d 228 (1958), quoting 23 Am.Jur. 761 §11 ("Fraud is a malfeasance, a **positive** act resulting from a willful intent to deceive; negligence is strictly nonfeasance, a wrongful act resulting from inattention, but not from design")(emphasis added). "Malfeasance" is broad enough to encompass intentional, including reckless, "wrongful acts." Besides that, to the extent there is any ambiguity regarding the policy definition of "wrongful acts," it is well-settled that ambiguities in an insurance contract are strictly construed against the insurer and in favor of the insured. *Greer v. Northwestern National Ins. Co.*, 109 Wn.2d 191, 201, 743 P.2d 1244 (1987).

**III. CONCLUSION**

USF&G's motion for partial summary judgment (Ct. Rec. 20) is **GRANTED in part** and **DENIED in part**.

The court finds as a matter of law that there is no coverage for any violation of RCW 64.40.020 because the only type of violation actionable under that statute is a "willful" violation. The USF&G insurance policy excludes coverage for "willful" violation of any statute committed with the knowledge or consent of any insured, and constructive knowledge is tantamount to actual knowledge.[9]

The court finds as a matter of law that Washington public policy and the USF&G insurance policy do not preclude Feature from seeking recovery based on the common law theory of intentional interference with business expectancy.

/ / /

/ / /

/ / /

---

[9] This finding makes it unnecessary to address USF&G's judicial estoppel argument.

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT, IN PART- 16**

**IT IS SO ORDERED**.  The District Executive is directed to forward copies of this order to counsel of record.

**DATED** this 7th     of March, 2006.

        s/ Alan A. McDonald
        ALAN A. McDONALD
        Senior United States District Judge

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT, IN PART- 17**