UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>FEATURE REALTY LITIGATION | No. CV-05-333-AAM<br><br>ORDER DIRECTING SUPPLEMENTAL BRIEFING ON USF&G'S MOTION FOR PARTIAL SUMMARY JUDGMENT (CT. REC. 61) |

**THIS DOCUMENT RELATES TO:**

**CV-05-165-AAM; CV-05-222-AAM**

**BEFORE THE COURT** is Defendant United States Fidelity & Guaranty Company's ("USF&G") Motion for Summary Judgment Re: No Coverage for Tortious Interference (Ct. Rec. 61). The motion was noted without oral argument and is ripe for review. The Court has thoroughly reviewed the parties submissions and the applicable law, and concludes that supplemental briefing may assist the Court in deciding the motion. The following Order is intended to resolve several fundamental questions raised by the parties and to provide the parties the proper context for their supplemental briefing.

**A.    THE UNDERLYING SETTLEMENT AND JUDGMENT**

At the outset, it is most important to be mindful of the somewhat atypical settlement involved in this case. *Without USF&G's participation*, Feature settled its three separate claims asserted against the City by stipulating to the entry of judgment against it in the amount of $5.5 million dollars to be satisfied solely by recourse against the City's insurers, including USF&G. Judgment was entered in accordance

ORDER - 1

1  with this stipulation. In addition, the City also assigned all of its rights against
2  USF&G to Feature. Feature is now seeking to collect on the judgment and USF&G
3  seeks a declaration that its policy issued to the City does not provide coverage for
4  Feature's claims against the City.

5        In the underlying case against the City, USF&G elected not to defend its
6  insured against Feature. When an insurer elects not to defend and declines coverage,
7  as here, the insurer loses its customary control over the case and an insured may settle
8  rather than proceed to trial to determine its legal liability. *Bunge Corp. v. London and*
9  *Overseas Insurance Co.*, 394 F.2d 496, 497, (2d Cir.), cert. denied, 393 U.S. 952, 89
10 S.Ct. 376, 21 L.Ed.2d 363 (1968). By settling, however, the parties forego their right
11 to have liability "established" by a trier of fact. Parties to a litigation do not determine
12 each other's liability through their own settlement and compromise. This is reflected
13 in the wording of the judgment:

> "[S]atisfaction of this...Judgment shall be solely by recourse against...USF&G pursuant to the assignment of rights by [the City]...to [Feature]...The parties have agreed that this Judgment determines only the liability of the [City] for any liability it *may have* for the *alleged* wrongful acts of [the City] from and after May 19, 1999, related to the alleged delays in processing the application for a Plat Amendment for the Canyon Bluffs PUD, formerly known as the Mission Springs PUD..."

18 Ct. Rec. 38, Ex. A at 7 (emphasis added).

19       While the judgment is binding as to the City and Feature, it is not conclusive
20 as to USF&G or Feature's entitlement to recover on the underlying claims asserted
21 against the City. Notably, because the City received a covenant not to execute and
22 will not be held liable to pay the settlement, the City had "no incentive to drive a hard
23 bargain," that is, "no compunction to agreeing that judgment may be entered against
24 [it] for the policy limits, even if the claim is worth less than the policy limits, if it is
25 worth anything." *Alton M. Johnson Co. V. M.A.I. Co.*, 463 N.W.2d 277, 280 (Minn.
26 1990); *Besel v. Viking Ins. Co. of Wisconsin,* 146 Wash.2d 730, 49 P.3d 887 (Wash.
27 2002)(a covenant not to execute raises the specter of collusive or fraudulent

settlements). Accordingly, when a party seeks enforcement of a consent judgment of this nature, courts must be on guard to ensure that there are circumstantial guarantees of trustworthiness concerning the genuineness of underlying judgments.

### B. FEATURE'S BURDEN

In order to collect on this judgment Feature carries the burden of proof on the following two requirements. First, as the assignee of the City's rights against USF&G, Feature must demonstrate that the underlying claims resolved pursuant to the settlement fall within the coverage of the policy. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash.2d 724, 730, 837 P.2d 1000 (1992); *Estate of Jordan v. Hartford Acc. & Indem. Co.,* 120 Wash.2d 490, 495, 844 P.2d 403 (1993) ("An assignee steps into the shoes of the assignor and has all the rights of the assignor."). The duty to indemnify is not triggered unless coverage actually exists. Secondly, to guard against unfairness, Feature must demonstrate that the judgment reflects a reasonable and prudent settlement in view of the size of possible recovery and degree of probability of claimant's success against the insured. *See Chaussee v. Maryland Cas. Co.* 60 Wash.App. 504, 803 P.2d 1339, 1342-43 (1982)(citing cases); *Damanti v. A/S Inger*, 314 F.2d 395, 397 (2d Cir.) cert. denied, 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64 (1963).

It is the question of coverage which is raised by USF&G in their motion for partial summary judgment. USF&G argues it is undisputed that the assumed liability for the intentional interference with a business expectancy claim in the underlying case is not in actuality covered under its policy, thus USF&G is not obligated to pay for this claim.

### C. ELEMENTS OF COVERAGE IN THIS CASE

The determination of whether insurance coverage exists under a particular policy depends on the policy language, rather than the type of injury alleged or the

ORDER - 3

theory of liability plead.  Accordingly, in questions of insurance coverage any analysis must initially focus on the language of the policy itself, not upon general rules of coverage that are not necessarily responsive to the particular policy language involved here.  In the present case, the policy provides coverage for "'ultimate net loss' in excess of the 'self-insured retention'" for any civil claim because of "injury caused by a 'wrongful act' to which this insurance applies."  This coverage applies only if "the 'wrongful act' was committed in the 'coverage territory' during the policy period."  "Wrongful act" is defined as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by any insured . . . ." According to the plain meaning of this language, only wrongful acts occurring during the policy period give rise to *coverage*.[1]  *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wn.2d 789, 801, 881 P.2d 1020 (1994).  USF&G issued the City an insurance policy with a policy period of September 1, 1999 to September 1, 2002.

The general rules of interpreting the language of an insurance policy are well-settled.  The Court must construe an insurance policy as a whole, giving full force and effect to each clause. *Overton v.. Consol. Ins. Co*., 145 Wn.2d 417, 424, 38 P.3d 322 (2002).  Where policy language remains clear and unambiguous, the Court will enforce the provisions as written and not modify the policy or create ambiguity where none exists. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.,* 124 Wn.2d 789, 797, 881 P.2d 1020 (1994). Ambiguity exists if the policy is susceptible to more than one reasonable interpretation. *Transcon. Ins. Co. v. Wash. Pub. Util. Dists'. Util. Sys*., 111

---

[1] Feature disagrees "that coverage only applies to damages arising from wrongful acts committed during the policy period," citing *Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 690, 15 P.3d 115 (2000). Ct. Rec. 81 at 30.  Feature appears to have confused the question of the trigger of coverage and the scope of coverage.  The event which triggers an insurance policy's coverage does not define the extent of the coverage.  In this case, the plain language of the policy is such that coverage is triggered only if a wrongful act occurs during the policy period.  This clause does not place a temporal limitation with respect to damages.

ORDER - 4

Wn.2d 452, 456-57, 760 P.2d 337 (1988). An ambiguous provision must be construed in favor of the insured. *Transcon.*, 111 Wn.2d at 457.

In this case, whether coverage exists depends on whether Feature can demonstrate sufficient facts to show the occurrence of a "wrongful act" between September 1, 1999 and September 1, 2002. Feature objects to USF&G's motion contending USF&G wrongfully assumes that Feature must prove the City actually committed the tort of intentional interference with a business expectancy during the policy period. As noted above, the question of coverage does not depend on the actual or potential success on the individual elements of the theory of liability plead. The actual merit of the underlying claim is not directly relevant in a post-settlement coverage dispute, though the strength of the City's defenses would be relevant to the question of reasonableness. However, it is not uncommon for evidence relevant to coverage to overlap with evidence which would otherwise also be relevant to liability. While Feature need not prove the City's liability to demonstrate coverage, Feature does have the burden of establishing *actual facts* that prove the settled claims were within the policy's coverage. *Northwest Pump & Equip. Co. v. American States Ins. Co.*, 144 Or.App. 222, 227, 925 P.2d 1241 (1996). Usually, such facts are established at trial. However, where the claims have been settled, the insurer's obligation to pay and the determination of coverage must be based upon the facts inherent in the settlement and because this is a summary judgment proceeding, the undisputed facts. *Travelers Ins. Co. v. Waltham Indus. Labs. Corp.*, 883 F.2d 1092, 1099-1100 (1st Cir.1989) (stating that duty to indemnify is determined on the basis of the settlement and the undisputed facts, and remanding to resolve dispute over whether facts established that claim fell within policy exclusion); *Celotex Corp. v. AIU Ins. Co.*, 152 B.R. 661 (Bankr.M.D.Fla.1993) ("[W]hereas the duty to defend is measured by the allegations of the underlying complaint, the duty to indemnify is measured by the facts as they unfold at trial or are inherent in the settlement agreement.").

In sum, the question of coverage hinges on the interpretation and application of the language in the insurance policy to the facts inherent in the settlement. Unfortunately, the parties' briefing provides no such analysis. Instead, USF&G misguidedly claims the issue here is whether Feature could have had a reasonable business expectancy arise during the policy period. USF&G fails to recognize that coverage disputes do not hinge on the theory of liability plead. The issue is not whether a reasonable business expectancy arose during the policy period, but rather whether a "wrongful act" occurred during that time frame, as specifically defined in the policy. Proof of liability during the policy period is not required to meet this definition.

Fundamentally, USF&G's argument is that the City could not have committed a "wrongful act" during the policy period because there was nothing for the City to interfere with during that time-frame. Again, focusing on the theory of liability plead, USF&G claims that "[i]n order to establish coverage for Feature's intentional interference claim, Feature must show it had a legal right to permit issuance in the period beginning in December 2001 when Feature paid the fee and ending on September 1, 2002." Memo in Support at 13. However, the consent judgment suggests the factual basis of the settlement was not the City's failure to issue a permit, but rather the "alleged wrongful acts...from and after May 19, 1999, related to the alleged *delays* in the processing of the application for a Plat Amendment for the Canyon Bluffs PUD, formerly known as the Mission Springs PUD." It appears from this language that the alleged "wrongful act" which was the basis of the settlement was the delay in the processing of the applications.

It is not clear from the record what the alleged wrongful acts were or when they occurred. Neither party has attempted to specifically identify the conduct qualifying as a "wrongful act" under the policy. Moreover, neither party has attached affidavits or exhibits that would establish one way or the other the material fact in question here

ORDER - 6

– i.e. the timing of the alleged "wrongful act." However, without analyzing what specific acts occurred, why they do or do not qualify as "wrongful acts," and when they occurred, the Court cannot decide this issue. It is not this Court's obligation to research and construct legal arguments for the parties. USF&G has failed to connect its argument to any legal basis for a claim of summary judgment on the issue of coverage. Accordingly, at this time summary judgment is not warranted.

Rather than denying USF&G's motion outright, the Court will permit the parties to supplement the record with the Court's comments herein as a guide. The parties should focus on the factual basis of the intentional interference claim inherent in the settlement and the application of such facts to the coverage provision of the insurance policy.

**D. CONCLUSION**

The parties are directed to supplement the record as ordered above.

The Court **HEREBY RESERVES** ruling on Defendant's Motion for Summary Judgment and provides the parties an opportunity to address the issues raised by the Court with respect to the issue of coverage. Feature and USF&G may simultaneously file supplemental memoranda (and any necessary supplemental statement of facts), if any, by no later than August 21, 2006. Supplemental briefs may not exceed fifteen (15) pages. Responsive supplemental briefs, if any, shall be filed by no later than August 28, 2006. Responses may not exceed seven (7) pages.

**IT IS SO ORDERED.** The District Executive is directed to enter this order and furnish copies to counsel.

**DATED** this 11TH day of August, 2006.

        s/ Alan A. McDonald
        ALAN A. McDONALD
        SENIOR UNITED STATES DISTRICT JUDGE