1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8    In Re:

9    FEATURE REALTY LITIGATION

10

11

12

)
)
)
)
)
)
)
)
)
)

NO.    CV-05-0333-WFN

ORDER GRANTING FEATURE
REALTY'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT
RE: KNOWN RISK DOCTRINE

13    **This Order Also Relates to:   CV-05-0165-AAM; CV-05-0222-AAM**

14

15    Before the Court are Defendant United States Fidelity & Guaranty Company's

16 [USF&G] Motion for Partial Summary Judgment Re: No Coverage Under Known Risk

17 Doctrine (Ct. Rec. 111) and Feature Realty's [Feature] Cross-Motion for Partial Summary

18 Judgment Re: Known Risk Doctrine (Ct. Rec. 129).

## I.  FACTS

20    The Court will not reiterate the extensive factual and procedural background

21 summarized in previous summary judgment decisions, familiarity with which is assumed.

22 Additional facts, as necessary, will be related in the Court's analysis of the summary

23 judgment arguments.

## II.  LEGAL STANDARD

25    The Federal Rules of Civil Procedure provide for summary adjudication when "the

26 pleadings, depositions, answers to interrogatories, and admissions on file, together with the

ORDER - 1

1    affidavits, if any, show that there is no genuine issue as to any material fact and that the party

2    is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c).  In a motion for summary

3    judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying

4    for the court those portions of the materials on file that it believes demonstrate the absence

5    of any genuine issues of material fact," the burden of production then shifts so that "the

6    nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific

7    facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec.*

8    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (*citing Celotex Corp. v. Catrett*, 477

9    U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach &*

10   *Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S. Ct. 435,

11   93 L. Ed. 2d 384 (1986).

12         On cross motions for summary judgment, the burdens faced by the opposing parties

13   vary with the burden of proof they will face at trial.  When the moving party will have the

14   burden of proof at trial, "his showing must be sufficient for the court to hold that no

15   reasonable trier of fact could find other than for the moving party." William W. Schwarzer,

16   SUMMARY JUDGMENT UNDER THE FEDERAL RULES: DEFINING GENUINE ISSUES OF MATERIAL

17   FACT, 99 F.R.D. 465, 487- 488 (1984).  In contrast, a moving party who will not have the

18   burden of proof at trial need only point to the insufficiency of the other side's evidence,

19   thereby shifting to the nonmoving party the burden of raising genuine issues of fact by

20   substantial evidence. *T.W. Electric*, 809 F.2d at 630 (*citing Celotex*, 477 U.S. at 323); *Kaiser*

21   *Cement*, 793 F.2d at 1103-04.  In judging evidence at the summary judgment stage, the Court

22   does not make credibility determinations or weigh conflicting evidence, and draws all

23   inferences in the light most favorable to the nonmoving party. *T.W. Electric*, 809 F.2d at

24   630-31 (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.

25   Ct. 1348, 89 L. Ed. 2d 538 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir.

26   1991).  The evidence the parties present must be admissible.  FED. R. CIV. P. 56(e).

ORDER - 2

1   Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

2   genuine issues of fact and defeat summary judgment. *Thornhill Pub. Co., Inc. v. GTE Corp.*,

3   594 F.2d 730, 738 (9th Cir. 1979).

## III. DISCUSSION

5   The present case concerns the extent of USF&G's duty to indemnify Feature under a

6   policy issued by USF&G to the City of Spokane (the City) for the $5.5 million dollar 2005

7   settlement reached in the underlying state court litigation brought by Feature against the City.

8   The City is not a party to this coverage dispute as it assigned its rights under the USF&G

9   policy to Feature as part of the underlying settlement.  The duty to indemnify can only be

10  triggered if coverage actually exists.  USF&G argues here that Feature cannot succeed on its

11  claim to recover any insurance proceeds because the "known risk" doctrine precludes

12  coverage of the settled claims.  As USF&G has raised this issue in the form of an affirmative

13  defense to coverage, USF&G bears the burden of proving the doctrine's applicability.  *See*

14  *Outboard Marine Corp. v. Liberty Mut. Ins. Comp.,* 154 Ill.2d 90, 180 Ill. Dec. 691, 607

15  N.E.2d 1204, 1212 (1992).

16  The Court begins with some brief background on the known risk doctrine.[1]  This

17  doctrine is a common law defense that exists independent of the particular terms of insurance

18  _____

19  [1]Besides the term "known risk," courts also use the terms "known loss" and "loss in

20  progress," with some courts viewing these as distinct theories resting on the same principle

21  and others viewing them as the same.  As courts in Washington have equated these doctrines,

22  it is unnecessary for the Court to explore the distinctions, if any, here. *See Hillhaven*

23  *Properties Ltd. v. Sellen Const. Co., Inc*., 133 Wash. 2d 751, 758-759, 948 P.2d 796 (1997).

24  Although it seems most commentators agree "known loss" is most accurate in its description

25  of the doctrine of fortuity, the Court will use the term "known risk" as it was utilized by the

26  parties in their motions.

ORDER - 3

1   policies.  7 COUCH ON INSURANCE § 102:8; § 102:9 (3d ed. 2000).  Sometimes the doctrine

2   is described as being rooted in the policy of preventing fraud.  Sometimes it is described as

3   based on the essential characteristic of insurance -- the transfer from the policyholder to the

4   insurer the risk of fortuitous losses, not losses that are reasonably certain or expected to occur

5   within the policy period.  *Alcoa v. Aetna Cas. & Sur. Co.*, 140 Wash. 2d 517, 998 P.2d 856,

6   878-79 (2000).  In Washington, the known risk defense has been said to prevent "collect[ion]

7   on an insurance claim for a loss that the insured subjectively knew would occur at the time

8   the insurance was purchased."[2]  *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wash. 2d 789, 881

9   P.2d 1020, 1030 (1994).  There are almost as many formulations of the doctrine as there are

10  jurisdictions that have adopted it, with variations in: (1) how "loss" is defined, (2) the degree

11  of certainty of the insured's knowledge that the loss has or will occur, and (3) whether the

12  insured's knowledge is judged by a subjective or objective standard.  Though the parties have

13

14       [2]The Court is aware that in some jurisdictions the spectrum of standards implemented

15  for the so-called non-fortuity defenses are applied differently depending on whether the case

16  involves first- or third-party insurance.  *See e.g. Montrose Chemical Corp. v. Admiral Ins.*

17  *Co.*, 10 Cal. 4th 645, 913 P.2d 878 (Cal. 1995) (holding that the loss-in-progress rule will not

18  defeat coverage for a claimed loss where it had yet to be established, at the time the insurer

19  entered into the contract of insurance with the policyholder, that the insured had a legal

20  obligation to pay damages to a third party in connection with a loss).  This is because, in the

21  case of third party insurance, the contingent event insured against is not the loss itself, but

22  rather the insured's legal obligation to pay for damages to others arising from the loss .  The

23  Washington Supreme Court, however, has not distinguished between the two types of policies

24  and relies instead upon the general principle that one who knows of a loss or a liability,

25  whether as a first or third party, should not be allowed to insure against either.  *See Hillhaven*

26  *Properties Ltd. v. Sellen Const. Co., Inc.*, 133 Wash. 2d 751, 762-763, 948 P.2d 796 (1997)

ORDER - 4

1    cited to some of these various formulations, the Court finds it unnecessary to resolve their

2    differences in order to apply the doctrine coherently here.

3        As the Court is bound to apply the law as expressly enunciated in the state of

4    Washington, the Court turns first to the seminal Washington case, *Pub. Util. Dist. No. 1 v.*

5    *Int'l Ins. Co.*, 124 Wash. 2d 789, 881 P.2d 1020 (Wash. 1994). The case bears resemblance

6    to this case in that it also involved a coverage dispute with a third party excess liability

7    insurance carrier following a settlement. In the underlying dispute, bondholders had filed

8    class actions for alleged securities law violations against ten public utility districts [PUDs]

9    and other individual utility commissioners and employees in connection with the termination

10   of several public power supply plants and the sale of the bonds financing the power projects.

11   *Id.* The PUDs eventually settled and as part of the settlement received an assignment of

12   excess liability insurance policies which the bondholders had previously received as part of

13   their settlement with the individual defendants. *Id.* After the settlement, the PUDs then filed

14   this case against the excess liability insurers seeking to recover under these policies. *Id.* At

15   trial one insurer, Industrial, claimed coverage under its policy was precluded by the known

16   risk doctrine. The trial court had given the following instruction to the jury:

17           The 'known risk' principle only applies if you find that the insureds know that there
             was a substantial probability that they would be sued by the bondholders for securities
18           violations at the time the Industrial policy was issued[.]

19   *Id.* at 806. On appeal, the insurer claimed the jury instruction too narrowly defined the known

20   risk doctrine. *Id.* The insurer felt coverage should be excluded because the PUDs knew of

21   the liability causing event (the termination of the power plants and the sale of the bonds) and

22   they knew of the possibility of lawsuits and losses arising from that event when they

23   purchased the insurance policy. *Id.* The Washington Supreme Court rejected the insurer's

24   argument and affirmed the trial court's use of a subjective "substantial probability" test. *Id.*

25   at 808. In other words, it was not error to require the insurer to prove the policyholder's

26   actual knowledge of a substantial probability of loss in order to bar coverage. Strong

ORDER - 5

1    indicators of the substantial likelihood of loss would not have been enough under this

2    standard. Also significant here, is how the loss was defined. Even though the PUDs arguably

3    knew at time they purchased the insurance that they might be subject to suits and losses

4    arising from termination of power plants, knowledge of the likelihood of losses in general was

5    insufficient. *Pub. Util. Dist. No. 1* held that in order for the known risk doctrine to apply, the

6    insured must possess knowledge of the likelihood of the same type of loss, or in this instance,

7    the type of suit, that actually occurred. *Id.*

8         USF&G advocates for a broader formulation of the known risk doctrine than utilized

9    in *Pub. Util. Dist. No. 1*. However, no matter how the doctrine is formulated in its fine points,

10    both parties and every court decision uniformly emphasize the importance of some sort of

11    "knowledge" actually possessed by an insured. In addition, more is required than mere

12    awareness of a potential risk of a loss or of the potential that damages may arise sometime in

13    the future traceable to some act known to have occurred in the past. The doctrine is triggered

14    by an awareness of the certainty of a loss or at least the "substantial probability" of a loss.

15    Finally, the loss is defined by the specific type of claim which eventually actually occurred.

16    The Court would add that a policyholder's awareness of the substantial probability of loss has

17    been shown through evidence which demonstrates when the policy holder first received notice

18    of the events forming the basis for the underlying suit. Indeed, it is the fact that the liability-

19    causing event is known to the insured, that supports the use of the doctrine. *Hillhaven Props.,*

20    133 Wash. 2d 751, 758, 948 P.2d 796 (1997) (*citing Pub. Util. Dist. No. 1*, 124 Wash. 2d at

21    806, 881 P.2d 1020). Understood against this backdrop, the evidence of record does not give

22    rise to a known risk to defeat coverage here.

23         In order to sustain its burden USF&G must demonstrate the City of Spokane

24    subjectively knew at the policy's inception (September 1999) that there was a substantial

25    probability it would be sued by Feature for its behavior contributing to the alleged delay in

26    the processing of the amended plat application. The Court's inquiry must therefore focus on

ORDER - 6

1   what and how much information the City had about (1) the events which eventually formed

2   the basis of Feature's tortious interference claim against the City and (2) the risk of

3   loss/liability that behavior posed.  In this case, the events generally alleged to have been the

4   cause of Feature's losses were the City's alleged acts and omissions resulting in the alleged

5   delay in the processing of the plat amendment.

6       Despite electing to pursue this argument on summary judgment rather than at trial,

7   USF&G has produced no evidence touching on the policyholder's knowledge or awareness

8   at this critical time period.  Instead, USF&G simply maintains: "[T]his court's December 13,

9   2006 order establishes that the process causing the loss began on May 19, 1999.  The USF&G

10  policy commenced on September 1, 1999.  Accordingly, the Known Risk doctrine precludes

11  coverage to the City."  Ct. Rec. 148 [USF&G's Reply Memo.] at 14.  To be clear, the Court's

12  December 13, 2006 order established that the factual basis forming the basis of the tortious

13  interference claim resolved by the 2005 settlement agreement was alleged acts or omissions

14  taken by the City from and after May 1999.  The fact that the events or occurrences  forming

15  the basis of Feature's tortious interference claim originated prior to the inception of the

16  USF&G insurance policy, does not by itself preclude coverage.  Indeed, neither party

17  maintains and the Court is not aware of any rule which prohibits an insured from purchasing

18  coverage against future, unknown claims, even though the loss from which claims may arise

19  has already occurred or may be in the process of occurring.

20      USF&G's assertion that the City had "received strong indications" (Ct. Rec. 112

21  [USF&G's Memo.] at 15) that a loss would occur is fundamentally disconnected from any

22  facts in evidence  pertaining to the time period prior to the inception of the insurance policy.

23  In 1998, the City had entered into a stipulated settlement agreement with Feature which

24  resolved the parties' claims then pending before the superior court and set forth a framework

25  for resolving future issues related to the Canyon Bluffs development, including obligations

26  regarding the submission and processing of plan modifications and the issuance of permits.

ORDER - 7

1  Ct. Rec. 1, Ex. A [Stipulated Settlement Agreement] in 03-CV-0063-JLQ. During settlement

2  talks, Feature had apparently discussed with the City its desire to revise the previously

3  approved plat to convert several previously planned multi-family lots into single family lots.

4  Although the City had knowledge of these facts, these facts provide no evidence of a

5  substantial probability of liability for interference relating to the alleged delay.

6      It is also undisputed that on May 19, 1999, Feature submitted an amended plat

7  application with the City and the City did not approve the application prior to the inception

8  of the policy.[3]  Critically absent from the record, however, is any evidence of the City's

9  knowledge of these events. Indeed, the declaration of Assistant City Attorney Milton

10 Rowland provides that the first time he heard of the plat amendment application filed by

11 Feature was in *June 2000* when he received an inquiry from Feature's attorney, Blaine

12 Morley, regarding the status of the application.  Ct. Rec. 128 [Rowland Decl.] at ¶ 4.  After

13 investigating the matter with City personnel, Mr. Rowland advised Mr. Morley that the City

14 could not locate the plat amendment documents and that he could not find any City personnel

15 who had knowledge of them.  *Id.*  The declaration of Blaine Morley is consistent with this

16 assertion.  Ct. Rec. 127 [Morley Decl.] at ¶ 5.  Finally, it is undisputed that Feature did not

17 assert any claim based upon the delay in the processing of the plat amendment until years

18 after the inception of the policy.  Ct. Rec. 133 [Feature's S.O.F.] at ¶ 10.  Nor had the City's

19 attorney heard of any threatened claim by Feature prior to September 1999.  *Id.* at ¶ 9.

20

21      [3] USF&G contends that the City's "failure and/or refusal to approve the May 19, 1999

22 amended plat application" establishes that the City had knowledge that a loss would occur.

23  Ct. Rec. 112 [USF&G's Memo.] at 20.  A "refusal" is an act, rather than a failure to act or

24 an omission.  There is no evidence in the record of the City "refusing" to approve the

25 application prior to September 1999, or for that matter, taking any action upon it prior to June

26 2000.

ORDER - 8

1    The uncontradicted evidence of record suggests City officials were not even aware of

2  Feature's May 1999 filing of the amended plat application and their own inaction in

3  processing it until sometime in the year 2000, well after the inception of the policy period.[4]

4  Logically, the City could not have had any awareness of the possible effects of its conduct

5  until after becoming aware of the circumstance itself.  While USF&G urges the Court not to

6  "blindly accept[] whatever the insured claims to have known or not known prior to the

7  inception of the policy," (Ct. Rec. 148 [USF&G Reply Memo.] at 10) it is the litigants'

8  burden on summary judgment to present the relevant facts and USF&G has presented no

9  evidence to cause the Court to question the present record.

10    USF&G may speculate that had the City taken different steps upon the filing of the

11  amended plat application, the City may have become aware of an increased likelihood of the

12  risk of loss associated with its conduct prior to the inception of the USF&G policy.  But

13  summary judgment is not about hypothetical facts not in the record.  Moreover, the known

14

15

16

_____

17    [4]USF&G contends Feature should be judicially estopped from contending the City was

18  ignorant of the delays prior to September 1999, arguing the position contradicts Feature's

19  prior assertions that Feature's claims against the City were based upon wrongful conduct

20  commencing in May 1999. Ct. Rec. 148 [USF&G's Reply Memo.] at 12.  Feature's positions

21  are not inconsistent or opposite.  Feature's position in the underlying litigation that the City

22  should be held liable for its acts and omissions from and after May 19, 1999, says nothing as

23  to the nature and extent of City's knowledge of those acts or omissions, or the City's

24  knowledge of the risk of loss those actions posed from May 1999 to September 1999.  The

25  relevant considerations, including the knowledge element, for tort liability and the known risk

26  defense are not one and the same.

ORDER - 9

risk doctrine was not intended as a tool for punishing the insured for what it did not know, but perhaps might have known under different circumstances.[5]

## IV. CONCLUSION

As there is no evidence from which a fact finder could possibly conclude the City of Spokane possessed the requisite knowledge of a substantial probability of loss  prior to the

---

[5]Where the policyholder lacked actual knowledge, some jurisdictions have applied the known risk doctrine less stringently and found it sufficient that the policyholder have only "a reason to know," or "evidence of a probable loss." *See Missouri Pac. R.R. v. American Home Assur. Co.* (1997), 286 Ill. App.3d 305, 221 Ill. Dec. 648, 675 N.E.2d 1378 (1997); *Outboard Marine, supra,* 154 Ill.2d 90, 180 Ill. Dec. 691, 607 N.E.2d 1204; *Carter Lake v. Aetna Cas. and Sur. Co.*, 604 F.2d 1052 (8th Cir. 1979). This standard has been used primarily in the environmental context, for example, where a business regularly disposed of chemicals that it knew or should have known involved a probability of contamination. *See American States Ins. Co. v. Maryland Cas. Co.*, 587 F. Supp. 1549 (E.D. Mich. 1984). Though Washington has not utilized such an approach, USF&G argues for its application here. Regardless of which standard of knowledge is used, the Court is aware of no case where insurance coverage was denied where the insured was actually ignorant of the events or conduct contributing to the increased risk of loss. Indeed, precluding coverage based upon the insured's negligent failure to investigate and obtain knowledge of its own omission would defeat the very purpose of third party liability coverage. *See Chu v. Canadian Indem. Co.,* 224 Cal. App.3d 86, 94-95, 274 Cal. Rptr. 20 (4th Dist. 1990). "The insured may be negligent indeed in failing to take precautions or to foresee the possibility of harm, yet insurance coverage protects the insured from his own lack of due care." *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.,* 45 Cal. App. 4th 1, 52 Cal. Rptr. 2d 690 (1996).

ORDER - 10

1   inception of the USF&G insurance policy, the Court concludes that the "known risk" defense[6]

2   does not bar potential coverage under the policy issued by USF&G.  Accordingly,

3       **IT IS ORDERED** that:

4       1.   United States Fidelity & Guaranty Company's Motion for Summary Judgment Re:

5   No Coverage Under Known Risk Doctrine, filed January 25, 2007, **Ct. Rec. 111**, is **DENIED**.

6       2.   Feature Realty's Cross-Motion for Partial Summary Judgment Re: Known Risk,

7   filed February 5, 2007, **Ct. Rec. 129**, is **GRANTED**.

8       The District Court Executive is directed to file this Order and provide copies to

9   counsel.

10      **DATED** this 10th day of May, 2007.

11

12                                          s/ Wm. Fremming Nielsen
                                        WM. FREMMING NIELSEN
13  05-10                              SENIOR UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

    [6] The Court's ruling also applies to the "known loss" and "loss in progress" defenses.

ORDER - 11