1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| In Re:<br><br>FEATURE REALTY LITIGATION | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

NO.    CV-05-0333-WFN

ORDER DENYING FEATURE'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: REASONABLENESS
OF THE UNDERLYING JUDGMENT

**This Order Also Relates to:   CV-05-0165-WFN; CV-05-0222-WFN**

Before the Court is Defendant Feature Realty's [Feature] Motion for Partial Summary Judgment Re: Reasonableness of Underlying Judgment (Ct. Rec. 117). Having considered the parties' arguments and submissions, and for the reasons set forth below, the Court enters the following order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In this consolidated diversity insurance dispute, Feature Realty, the owner and developer of a Planned Unit Development known as Canyon Bluffs PUD, seeks recovery against excess liability insurer, USF&G, based upon a state court judgment entered in 2005 against USF&G's insured, the City of Spokane, Washington [the City]. The procedural and factual history of this case is lengthy and complex and has been thoroughly summarized in previous summary judgment rulings of the court. The following summary assumes familiarity with these facts and outlines only the facts pertinent to the pending motion.

USF&G issued an excess "Public Officials and Employees" liability policy to the City of Spokane for the period of September 1, 1999 to September 1, 2002, carrying a $10,000,000

ORDER - 1

1   limit of liability per wrongful act and subject to a $250,000 self-insured retention. The policy

2   provides for USF&G's payment of its insured's "ultimate net loss" "in excess of the 'self-

3   insured retention' for any civil claim because of injury caused by a 'wrongful act' to which

4   this insurance applies." The term "ultimate net loss" is defined as "[t]hose sums that the

5   insured becomes legally obligated to pay as damages" and "associated 'claim expenses'".

6       USF&G was first notified of Feature's asserted legal claims against the City in July,

7   2002, after Feature had amended its complaint then pending in Spokane Superior Court to add

8   claims seeking damages related to the delays in the plat approval and permitting processing

9   for the Canyon Bluffs PUD. Feature alleged the City had unlawfully delayed the processing

10  of its application for a plat amendment and in doing so had violated statutory law and

11  committed the tort of interference with a business expectancy. In December 2002, USF&G

12  issued the first of several reservation of rights letters, reserving its right to contest coverage

13  and expressing its doubt as to coverage under the policy for Feature's claims. Ct. Rec. 120,

14  Ex. 8. Up until the time of the settlement, there was correspondence between USF&G and

15  the City regarding Feature's claims, and USF&G maintained the erroneous position that it did

16  not believe its policy was implicated at all by the claims. Ct. Rec. 120, Ex 8 at 233

17  (". . . USF&G is hard pressed to see how the . . . policy, if implicated at all, would be called

18  upon to contribute a significant amount to the possible settlement of this matter.") Despite

19  the City's request for USF&G's participation in its defense, USF&G recognized it owed no

20  duty to defend the City and though it had the right to associate in the City's defense, it did not

21  elect to do so. Despite its non-participation in the City's defense, USF&G nevertheless made

22  itself present at two mediations, which failed. USF&G was apparently asked to leave the first

23  mediation, and at the second mediation in January, 2005, it made a settlement offer of

24  $500,000 in full satisfaction of all claims, which Feature rejected.

25      In April, 2005, after ten years of litigation history and in the face of upcoming

26  summary judgment hearing, the City and Feature reached a settlement, without USF&G's

ORDER - 2

express consent, which was approved by the Spokane City Council on April 18, 2005. The settlement agreement called for the entry of a covenant judgment in favor of Feature in the amount of $5.5 million and resolving the liability of the City for the alleged wrongful acts from and after May 19, 1999 related to the alleged delays in the processing of the application for Plat Amendment for the Canyon Bluffs PUD. In addition, the City agreed to assign to Feature its insurance rights under the policies issued by excess insurers Genesis Insurance Company and USF&G, and in exchange, Feature entered into a covenant not to execute against the City. The assignment right expressly included all claims for policy benefits (contract or bad faith), for violations of the Consumer Protection Act, for negligence, for breach of contract, and for attorney fees and costs.

The City and/or Feature notified the state superior court of the settlement and noted the consent judgment for consideration by the court, requesting also that the court find the judgment amount to be reasonable. The hearing date on the motion was scheduled for May 20, 2005. USF&G became aware of the settlement and scheduled reasonableness hearing on April 21, 2005. On or about April 27, 2005, USF&G's administrator and agent, Discovery Managers, Ltd. [Discovery Re:] filed a Motion to Intervene pursuant to civil rule of procedure 24(a) requesting to "intervene as a matter of right" "for the limited purpose of participating in the reasonableness hearing on the settlement. . . ." Ct. Rec. 120 [Decl. of Frank Cordell] Ex. 2 at 13. USF&G specifically claimed in its motion that it desired to seek discovery and "present[] evidence and argument regarding the reasonableness of the settlement." *Id.* at 19. It claimed its participation would neither delay or prejudice the existing parties. USF&G also requested the hearing be continued due to a scheduling conflict.

On May 20, 2005, in an oral ruling, state superior court Judge Salvatore Cozza ruled that USF&G could be present at the reasonableness hearing "as an additional party" with "sufficient opportunity to argue the reasonableness of the overall settlement." Ct. Rec. 120, Ex. 3. Judge Cozza denied USF&G's request for additional discovery because he did not

ORDER - 3

1  believe the discovery was "really going to add that much. . . to the insurance company's
2  ability to protect its interests. . . ." *Id.* Judge Cozza denied USF&G's formal intervention as
3  a party because it was anticipated that USF&G "at some point" would be added as an
4  "additional party" (presumably via Feature's later filing of its Fourth Amended Complaint)
5  and he felt that way was the "proper way to get [USF&G] into the case." *Id.* The
6  reasonableness hearing was rescheduled for June 10, 2005.

7       Feature thereafter filed pleadings with the state court seeking a ruling on the
8  reasonableness of the covenant judgment and for leave to file a Fourth Amended Complaint
9  which would assert against the City's excess insurers the enforcement or coverage claims it
10  would acquire by assignment in the covenant judgment.

11       USF&G received copies of Feature's pleadings on May 27, 2005 and in fairly short
12  time, filed a 43- page response mounting its opposition against both the reasonableness of
13  the settlement and the proposed amendment of the complaint. *See* Ct. Rec. 120, Ex. 4.
14  USF&G discussed in detail each of the nine factors relevant to the determination of
15  reasonableness and submitted an expert report in support of its contention the settlement was
16  not reasonable.

17       In the meantime, USF&G initiated its own Declaratory Judgment action against Feature
18  in this court, Cause No. 05-CV-0165, which was eventually consolidated into this action.

19       On June 10, 2005, a hearing was held before Judge Cozza with counsel for Feature, the
20  City, USF&G and Genesis Insurance all present and participating. In one afternoon, the court
21  heard argument concerning the proposed amendments to the complaint and the propriety of
22  holding a reasonableness hearing, listened to the argument and testimony on the
23  reasonableness of the covenant judgment, and then delivered an oral ruling finding the
24  proposed judgment reasonable. Judge Cozza rejected the insurer's argument that it was
25  neither necessary nor appropriate to conduct a reasonableness hearing: Judge Cozza believed
26  the reasonableness hearing was appropriate. Ct. Rec. 120, Ex. 6 at 201. During the hearing,

ORDER - 4

after Feature's counsel suggested he offer the court direct examination of witnesses, USF&G made known its perceived unfairness of the proceeding:

> We have repeatedly asked . . . for those exhibits and have yet to receive those . . . [w]e are now just hearing...about putting people on the witness stand. We are not here as parties. The court has indicated that. I don't know how we can cross-examine if we are not parties. We certainly couldn't subpoena anybody and bring them in to court. We could not subpoena any records to bring them in here. So I don't know procedurally, Your Honor, where we are at with regards to this, because we are not official parties. We are here, I guess, participating, whatever that means, but I don't know how we can cross examine. Then on witnesses, we didn't even know about this. We are just being informed about this right now . . . I am really perplexed by how we are supposed to proceed and defend ourselves and defend our clients in light of the proceedings thus far.

Ct. Rec. 120, Ex 5 at 116.

At the conclusion of the hearing, the Court gave an oral ruling analyzing each of the nine criteria a court is to consider under *Chaussee v. Maryland Casualty Co.*, 60 Wash. App. 504, 509-10, 803 P.2d 1339 (1991), on the question of reasonableness.[1]   Judge Cozza concluded that, ". . . on the whole, the weight of these factors to be in favor of the resolution of the matter along the lines outlined by the city and the plaintiffs, notwithstanding the position that has been outlined here by the insurance companies today. So, for those reasons, the court will find the proposed judgment to be reasonable, and I will sign accordingly." Ct.

---

[1]The Court in *Chausee* extended the application of the nine factors set forth in *Glover v. Tacoma General Hosp.*, 98 Wash. 2d 708, 717, 658 P.2d 1230 (1983), overruled on other grounds by Crown Controls, Inc. v. Smiley, 110 Wash. 2d 695, 756 P.2d 717 (1988).  They are: 1) releasing persons damages; 2) merits of releasing persons liability theory; 3) merits of the released persons defense theory; 4) released persons relative faults; 5) risks and expenses of continued litigation; 6) released persons ability to pay; 7) evidence of bad faith, collusion or fraud; 8) extent of releasing persons investigation; 9) interest of the parties not being released.

ORDER - 5

Rec. 120, Ex 6 at 207-208.    USF&G immediately filed a notice of appeal of the reasonableness decision.

On June 15, 2005, rather than require an entirely new action be filed, Feature was permitted to file its Fourth Amended Complaint asserting breach of contract, breach of the duty of good faith, and equitable contribution claims against the City's insurers.  On July 19, 2005, the Court of Appeals advised the parties that the reasonableness and intervention decisions USF&G sought to appeal "might not be appealable as a matter of right," because it questioned whether the trial court had rendered a final judgment.  The appeals court set the matter for a motion to determine appealability on August 30, 2005.

On July 27, 2005, USF&G filed a notice of removal of the Fourth Amended Complaint, which commenced Cause No. CV-05-222 in this court.  USF&G notified the Court of Appeals of the removal and citing to 28 U.S.C. 1446(d)[2], advised the court "[w]e consider the state court action stayed until conclusion of the federal action."  Ct. Rec. 135 [Patterson Decl.], Ex. 3.  The state court appeal of the reasonableness decision remains stayed today.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[2]After filing the notice of removal in federal court, defendants are required to file a copy of the notice in state court. 28 U.S.C. § 1446(d).  Staying the state court matter until determination of an action in federal court is not generally viewed as a right (as USF&G appears to have approached the matter), but rather a matter of comity and discretion which the state court may exercise upon application depending on the circumstances.  For example, to avoid duplicatous or inconsistent results in the same case, state courts may exercise the power to stay where the federal adjudication could affect the outcome of the state court proceeding.

ORDER - 6

affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c)). In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S. Ct. 435, 93 L. Ed. 2d 384 (1986).

On cross motions for summary judgment, the burdens faced by the opposing parties vary with the burden of proof they will face at trial. When the moving party will have the burden of proof at trial, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." William W. Schwarzer, SUMMARY JUDGMENT UNDER THE FEDERAL RULES: DEFINING GENUINE ISSUES OF MATERIAL FACT, 99 F.R.D. 465, 487- 488 (1984). In contrast, a moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting to the nonmoving party the burden of raising genuine issues of fact by substantial evidence. *T.W. Electric*, 809 F.2d at 630 (*citing Celotex*, 477 U.S. at 323); *Kaiser Cement*, 793 F.2d at 1103-04. In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *T.W. Electric*, 809 F.2d at 630-31 (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence the parties present must be admissible. FED. R. CIV. P. 56(e).

Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The parties agree that Washington state law governs this diversity dispute. Under Washington law, insurance policies are construed as contracts, and interpretation of policies is a matter of law. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wash. 2d 477, 687 P.2d 1139, 1141-42 (1984). Policies are to "be given a fair, reasonable, and sensible construction" that comports with how the average purchaser of insurance would view the policy. *Grange Ins. Co. v. Brosseau*, 113 Wash. 2d 91, 776 P.2d 123, 125 (1989). Generally, the burden is on the insured in an action on an indemnity policy to show that the loss suffered comes within the terms of the insurance policy. *Waite v. Aetna Casualty & Sur. Co.*, 77 Wash. 2d 850, 467 P.2d 847, 850 (1970).

## III. DISCUSSION

**A. <u>Introduction.</u>** This case involves the use of a procedure whereby an insured involved in a coverage dispute with its insurance provider assigns its claims against the provider to the third-party plaintiff in exchange for a covenant not to execute against the insured's assets. This settlement device frees the insured from monetary liability, and in turn, allows the third-party plaintiff to STEP into the shoes of the insured and bring suit against the provider, as Feature has done in this case, for whatever claims the insured assigned to the plaintiff. The issue these facts present is to what extent a settlement and judgment utilizing such a device are valid and binding upon an excess insurer. This case specifically concerns the enforcement of such a settlement upon a non-consenting excess insurer with no duty to defend, who opted not to associate in its insured's defense, who issued a reservation of rights as to coverage, and who waited to file a declaratory judgment action as to coverage until after the underlying settlement was already reached.

ORDER - 8

The Court has explained in earlier rulings that there are two essential considerations in any action concerning this type of settlement agreement and stipulated judgment: coverage and reasonableness.  The Court has in a series of summary judgment rulings extensively discussed all aspects of the coverage requirement and in fact found, that as a matter of law, Feature has demonstrated that coverage under the USF&G policy exists.  Feature's pending motion now turns our attention to the issue reasonableness.

Feature's Motion for Partial Summary Judgment Re: Reasonableness argues the Court should give binding impact on the state trial court's determination that the settlement was reasonable and preclude USF&G from challenging the reasonableness of the judgment herein. Feature relies upon the theory of collateral estoppel.  If the Court deems the judgment reasonable, Feature's motion also seeks the Court's determination that USF&G is liable for the entire amount of the judgment.  USF&G opposes both contentions.

**B.  Impact of the Court's Decision on the Issue of Coverage.**  Before discussing the merits of Feature's motion, to place the motion in proper context the Court needs to address a preliminary issue it previously reserved-- whether USF&G owed a duty to pay under the policy.  It is important to keep in mind the theory of liability which Feature has primarily asserted as a basis for recovery of the amount specified in the consent judgment, is that USF&G has breached the terms of its insurance policy issued to the City of Spokane, that the City as the policyholder was entitled to damages attributable to the breach, and that by virtue of the assignment of the insured's rights against USF&G, Feature is entitled to sue and collect the damages.[3]

In order to prove a breach of contract claim Feature must demonstrate that there exists a contract imposing a duty on USF&G, and that USF&G failed to fully perform that duty.

---

[3]Feature's complaint also alleges claims for equitable contribution, bad faith, and a violation of the Consumer Protection Act.  See CV-05-222, Ct. Rec. 1, Ex A.

*Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 162 P.3d 1153, 1161 n. 3 (Wash. App. Div. I 2007). In addition, Feature must also prove that the amount of damages claimed is necessary to place it in the position it would have occupied had the duty been fulfilled. *Id.*

Where an insurer refuses to pay a claim that is within the coverage of a policy, its refusal is unjustified and the insurer is in breach of contract, regardless of its motivation in refusing to pay. 44 Am. Jur. 2d, Insurance § 1546, pp. 426-27 (1969); *Nautilus, Inc. v. Transamerica Title Ins. Co.*, 13 Wash. App. 345, 534 P.2d 1388 (1975); *Kong Yick Inv. Co. v. Maryland Cas. Co.*, 70 Wash. 2d 471, 423 P.2d 935 (1967). Common law damages for breach of the insurance contract include the amount of the settlement paid by the insured and all costs incurred in adjusting the claim, including attorney fees. *Nautilus, Inc., v. Transamerica Title Ins. Co.*, *supra*. Although such damages are often also sought in bad faith actions, the Court finds that a bad faith refusal to comply with the insurance contract is not a requisite to such recovery. *Id*. at 352.

Feature alleges USF&G breached the insurance contract by erroneously determining coverage and refusing to pay the City's costs of defending against the underlying suit and the amount of the stipulated judgment. Where the duty to pay or indemnify flows from a contractual relationship, the insureds' right to payment is dependent on the coverage provision or insuring agreement language of the policy and the application of the actual facts on a case by case basis. Here, USF&G issued a policy under which USF&G agreed it "will pay 'ultimate net loss' on behalf of any insured (including the 'Public Entity') in excess of the 'self-insured retention' for any civil claim because of injury caused by a 'wrongful act' to which this insurance applies." Ct. Rec. 4, Ex. C [USF&G Policy] at 1. USF&G's duty to pay arises when the facts demonstrate a right to coverage under the policy. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.,* 124 Wash. 2d 789, 881 P.2d 1020, 1032 (1994) (stating that the insured need not prove the validity of the claims, but need only show that the claims were within the scope of policy coverage). Where an insurer has agreed to pay those sums which an insured

ORDER - 10

becomes "legally obligated to pay as damages," as USF&G has done, coverage includes the establishment of legal liability for payment of damages.

This Court has already resolved the threshold issue of coverage. The Court has concluded as a matter of law, that the City's obligations under the insuring agreement were met and that no other policy conditions or exclusions, or other affirmative defense raised by USF&G herein, otherwise preclude coverage under the USF&G policy. USF&G has agreed to pay "[t]hose sums the insured becomes legally obligated to pay as damages" and "associated 'claim expenses'" in excess of the $250,000 self-insured retention arising from a claim or suit covered by the insuring agreement. The Court notes, the policy also provides that USF&G "will not be liable for damages that are not payable under the terms of the policy or that are in excess of the applicable limit of insurance."

Given the unambiguous language of the policy and in light of the Court's explicit previous summary judgment rulings on coverage and allocation, the Court hereby finds that upon entry of the covenant judgment, the predicate facts triggering the City's right to payment had occurred. According to the unambiguous terms of this insurance policy and in light of the Court's previous rulings, USF&G's obligation to indemnify the City its ultimate net loss became fixed with the execution of the settlement agreement and entry of the covenant judgment[4], as the self-insured retention had by that time already been met.

────────────────

[4]The time coverage attaches and the duty to pay arises depends on the type of insurance policy involved and whether it is a liability policy providing indemnity against liability or an indemnity policy providing indemnity against loss. The Court notes that USF&G maintains that this is an indemnity policy. Ct. Rec. 5 at 13. Because both indemnity and liability policies involve the duty to indemnify, there tends to be confusion and inconsistency in the labeling of insurance contracts. Whether a contract is one to protect against liability or to indemnify for loss depends upon the intention of the parties as shown by its terms. The fact

ORDER - 11

1     In light of the Court's conclusion that USF&G's coverage obligations were triggered,

2  the next question becomes whether there is any justification to relieve USF&G of this duty

3  or to relieve USF&G from liability for its failure to pay.  If no such justification is found to

4  exist, then the last remaining question becomes the amount USF&G must pay in damages

5  here.  It is clear from the pleadings, the heart of this dispute is whether USF&G is bound by

6  the $5.5 million figure and whether USF&G may challenge the enforceability of the judgment

7  and/or the reasonableness of that amount.  The fact that these questions remain is the reason

8  the Court has not determined whether USF&G is actually liable despite Feature's request the

9  Court do so.

10     **C.  <u>Limitations on USF&G's Ability to Challenge the Unauthorized Settlement</u>**

11  **<u>and Stipulated Judgment.</u>**  The extent to which a non-participating insurer will be permitted

12  to challenge an unauthorized settlement or consent judgment depends in part on the insurer's

13  and insured's conduct during the settlement of the underlying claims.  Key considerations are

14  _____

15  that a policy explicitly disclaims the duty to defend does not automatically render it an

16  indemnity policy.  Notably, the major substantive distinction between a liability policy and

17  an indemnity contract is that payment of a claim by the insured is a condition precedent to the

18  insured's right to recover under the indemnity contract, but not under the liability contract.

19  *See Hinton v. Carmody*, 186 Wash. 242, 60 P.2d 1108 (1936).   An insurance policy is one

20  of liability, rather than indemnity, where it states that the insurer "will pay on behalf of the

21  insured all sums which the insured shall become legally obligated to pay as damages," or any

22  language similar thereto.  7A Couch on Ins. § 103:5 (2007).  As there is no requirement that

23  the insured satisfy the judgment against him or her before the insurer becomes obligated

24  under the policy, this policy is a liability policy, not an indemnity policy.  Under this policy,

25  coverage attached and the insurers duty accrued when the liability for the covered claim in

26  excess of the self-insured retention attached.

whether the insurer was in breach of the policy at the time of the settlement, and whether the insurer denied its coverage obligation or issued a reservation of rights.  In this case, the material facts are that the insurance policy provided USF&G with the option, but not the obligation, to participate in the defense of the City against Feature's claims.[5]  Despite the City's request for USF&G's participation, USF&G elected not to exercise this option.  In addition, USF&G issued a reservation of rights, asserting its doubt that the claims fell within the coverage of the policy.  USF&G's strategy in the underlying case is accompanied by risk and consequences in this action.[6]

---

[5]This type of policy provision is included for the protection of the excess insurer. For example, the insurer may be wise to exercise its right to participate in situations where there is significant exposure in excess of the underlying limits and the insured or the underlying insurer is not mounting a strong defense.  Because of the effect the decision not to defend may have in the later coverage dispute, some authorities advise that, when the facts render coverage uncertain, the insurer, with the option to defend, would be well advised to defend until those uncertainties can be resolved against coverage.  "When in doubt defend." *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210 (Utah 2006) (*quoting* Appleman on Insurance Law and Practice § 136.2[C] (2d ed.2006)).

[6]As one commentator notes,

Many excess insurers have not been well served by blindly following a rote or standard approach in defending coverage actions. To be sure, "laying low" sometimes may be an appropriate approach. Too often, however, excess insurers blindly ride the coverage litigation train, incurring significant litigation expenses. Further, many an excess insurer has paid unwarranted amounts in settlement because lower level insurers have settled out on the eve of trial and the excess insurer was unprepared for trial.

See Scott M. Seaman & Charlene Kittridge, Excess Liability Insurance: Law and Litigation,

ORDER - 13

First, by electing not to associate in the defense of its insured, the insurer lost its opportunity to assert virtually any element of control over the defense.  As a result, in order to protect itself, the insured is likely to engage its own counsel, control its own defense, and may decide to either settle or litigate.  While the policy's cooperation, notice or consent-to-settle provisions might seem to serve to protect the insurer, under Washington insurance law, an insured's non-compliance with these provisions will not relieve the insured of its duty to indemnify, unless the insurer is able to demonstrate it was actually prejudiced by the non-compliance. *Pub. Util. Dist. No. 1 v. Intl. Ins. Co.*, 124 Wash. 2d 789, 881 P.2d 1020 (1994); *see also Diamond Heights Homeowners Assn. v. National American Ins. Co.*, 227 Cal. App. 3d 563, (1991) (holding the excess insurer "may waive its rights under that [consent] clause if it rejects a reasonable settlement and at the same time fails to offer to undertake the defense.").  Since prejudice is presumed "only in extreme cases", *id.*, where the court that supervises the settlement then determines the settlement to be reasonable, demonstrating prejudice will be difficult in Washington.

Moreover, while the insurer is entitled to defend against its own legal obligation under the policy, it will not be permitted to re-try the settled case in the later coverage action. Essentially, after having been given the opportunity to participate, the insurer loses its opportunity to collaterally attack all issues necessarily adjudicated in order for the judgment to be rendered in the underlying suit.  *See Alan Windt, 1 Insurance Claims and Disputes 4th, § 6:22* ("[O]nce a final judgment has been entered on behalf of the party suing the insured, the insurer may not, absent collusion, reopen the factual or legal basis of the judgment when the insured makes a coverage claim.  This is true whether or not the insurer defended the insured and, if it did not defend, whether or not such refusal is justified."); *Eason v. Weaver*, 557 F.2d 1202, 1204-06 (5th Cir. 1977) ("Insurers with an option to defend who choose to

---

32 Tort & Ins. L.J. No. 3, 653, 663 (1997).

ORDER - 14

1   remain aloof from the earlier litigation, are estopped only as to factual matters essential to the
2   judgment rendered in the first suit, and does not waive any legal defenses it may have as to
3   its liability on the policy.").  The insurer will be estopped from contesting the insured's
4   liability, the injured parties' right to recover from the insured, and the amount of the
5   underlying loss.  *See id.*; *Public Utility Dist. No. 1 of Klickitat County v. International Ins.*
6   *Co. ,* 124 Wash. 2d 789, 881 P.2d 1020 (1994) (no requirement to prove claims in an action
7   to enforce a settlement)*; McCraney  v. Fire & Casualty Ins. Co.,* 182 Ga. App. 895, 357
8   S.E.2d 327 (1987).

9       Thus, the excess insurer who, despite notice and opportunity to become involved, elects
10  to wait until after a settlement is reached to defend itself, takes a risk of being forced to pay
11  for the unauthorized settlement if coverage is established.  *See e.g., Fuller-Austin Insulation*
12  *Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958, 38 Cal. Rptr. 3d 716 (2d Dist. 2006), as
13  modified on denial of reh'g, (Feb. 17, 2006) and review denied, (Apr. 19, 2006) and cert.
14  denied, 127 S. Ct. 248 (2006) (Excess carriers could not deny coverage for unauthorized
15  settlements, even though they had not breached the insurance contracts prior to the
16  settlements and did not have a duty to defend because (a) they had not acknowledged
17  coverage, and (b) they had knowledge of the impending settlement but declined to participate
18  in the settlement negotiations. "It would impose an unnecessary burden on primary insurers
19  and parties to an underlying action to hold that an excess insurer has an absolute right to
20  withhold its consent to a settlement, while at the same time decline to participate in the
21  action . . . . We do not believe that the policies can be read to permit an excess insurer to
22  hover in the background of critical settlement negotiations and thereafter resist all
23  responsibilities on the basis of lack of consent"); *City of Burlington v. Association of Gas &*
24  *Elec. Ins. Services, Ltd.* 170 Vt. 358, 751 A.2d 284 (2000) (having failed to identify its duty
25  to indemnify, excess insurer who had no duty to defend was liable to pay the covered portion
26  of the judgment following settlement).

ORDER - 15

Courts have recognized that USF&G's strategy taken in this case, may place the insurer in what may be viewed as a "no-win" situation-faced with the risk of liability for an inflated judgment on the one hand, and the possibility of surrendering its defense to coverage as the cost of containing such liability, on the other. *See Miller v. Shugart*, 316 N.W.2d 729, 734-735 (Minn.1982) ("Nevertheless, . . . if a risk is to be borne, it is better to have the insurer who makes the decision to contest coverage bear the risk."). To minimize the risk of liability and protect the excess insurer who does not participate in a settlement from an inflated judgment, Washington courts impose the additional requirement that all such settlements be reasonable. Thus, even though coverage has been deemed to exist, Feature's right to recover the amount of the consent judgment is not without limitation.

**D.  Reasonable Settlement Rule Applies.** When the judgment to which the parties have applied is created by anything less than a judicially supervised process, the real concern is the potential for collusion or fraud. The enforcement of a consent judgment with a covenant not to execute creates a tension between, "on the one hand, giving real meaning and effect to an insured's settlement with a claimant when the insurer has reserved its right to later deny coverage and, on the other, the impulse for the insured to settle for an inflated amount or capitulate to a frivolous case merely to escape exposure or further annoyance." *Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, 98 P.3d 572 (Ariz. App. Div. II 2004). Accordingly, courts are reluctant to enforce no-personal-liability settlements where the judgment is not subject to a sufficient degree of judicial scrutiny to ensure its trustworthiness.

To alleviate these concerns while also permitting the use of this settlement device, Washington law superimposes the requirement that the insured show that the settlement "was reasonable and prudent." *Chaussee v. Maryland Cas. Co.*, 60 Wash. App. 504, 510, 803 P.2d 1339 (1991) (adopting the rule from *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 120, 741 P.2d 246, 253 (1987)); *Sharbono v. Universal Underwriters Ins. Co.,* 161 P.3d 406 (Wash. App. 2007). Though the Washington cases discussing this particular requirement

ORDER - 16

have typically involved either bad faith actions and/or an insurer with a duty to defend, the same concerns  the reasonableness requirement is intended to target (e.g. the risk of an inflated judgment) are present regardless of the type of enforcement action and whether an insurer has a duty to defend or not.    By reviewing the case law evolution of the reasonableness requirement, it is apparent the requirement grew out of the nature of a *consent judgment* (versus a judgment on the merits) and general principles of indemnification law, and had nothing to do with the nature of the insurers alleged breach.  *See Chaussee v. Maryland Cas. Co.,* 60 Wash. App. 504, 803 P.2d 1339(Wash. App. 1991) (adopting rule from *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987);  *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987) (even when there is no anticipatory breach by the insurer, a stipulated judgment with a covenant not to execute is not binding on the insurer unless the insured can show that the settlement was reasonable and prudent); *But see*, *Caterpillar, Inc. v. Great American Ins. Co.,* 62 F.3d 955, 962 (7th Cir.1995) (holding that where insurer had no duty to defend, reasonable settlement rule did not apply because its purpose was to permit insureds to recover defense and settlement costs regardless of policy limits when they have been "left in the lurch" by their insurers); *Utah Power & Light Co. V. Federal Ins. Co.*, 983 F.2d 1549 (10th Cir. 1993) (excess insurer could not rely on the reasonable settlement rule in defense against unauthorized settlement because excess policy did not give the insurer the duty to defend and attendant right to control the litigation).  Given the nature of the consent judgment in this case includes a covenant not to execute, the Court finds that Washington law dictates the reasonable settlement rule applies.  This stipulated judgment may not be enforced against USF&G unless it is found reasonable and prudent.

It is implicit in both parties' positions taken in their briefs that they agree with this conclusion, as neither party has argued that the issue of reasonableness is irrelevant here. Indeed, the reasonableness of the settlement goes to the heart of several relevant issues.  First, it is a prerequisite to enforce this type of settlement arrangement upon a non-participating,

1   non-defending insurer and second, the reasonableness of the stipulated judgment is relevant
2   to the measure of recovery against the insurer.

3       **E.   Washington's Reasonableness Requirement and Procedure.** Washington courts
4   have found the use of reasonableness hearings pursuant to R.C.W. 4.22.060, typically
5   (although  not always) conducted prior to court approval of the settlement in the underlying
6   action, a suitable forum to provide additional judicial scrutiny to prevent the potential undue
7   prejudice to the insurer's interests.  *Red Oaks Condo. Owners Ass'n v. Sundquist Holdings,*
8   *Inc*., 128 Wash. App. 317, 322, 116 P.3d 404 (2005); *Chaussee,* 60 Wash. App. at 509-10,
9   803 P.2d 1339 (1991), opinion  modified on denial of reconsideration on other grounds, 812
10  P.2d 487 (Wash. Ct. App. Div. I 1991), cited with approval by *Besel v. Viking Ins. Co. of*
11  *Wisconsin*, 146 Wash. 2d 730, 49 P.3d 887 (2002).   The factors courts must consider in
12  determining reasonableness of stipulated judgment include merits of claimant's theory of
13  liability, the claimant's damages, the relative fault of the settling defendant, the risk and
14  expense of continuing litigation, the settling defendant's ability to pay, any evidence that
15  would indicate bad faith, fraud, or collusion, and the claimant's preparation and investigation
16  of the case.  *Besel*, 146 Wash. 2d at 730. The Washington Supreme Court has expressly held
17  that "the *Chaussee* criteria protect insurers from excess judgments especially where . . . the
18  insurer has notice of the reasonableness hearing and has an opportunity to argue against the
19  settlement's reasonableness."  *Id*.   The party requesting the settlement carries the burden of
20  proof regarding reasonableness.  *Brewer v. Fibreboard Corp.*, 127 Wash. 2d 512, 901 P.2d
21  297 (1995).

22      **F.   The State Court Reasonableness Hearing and Determination.** In this case there
23  has already been a judicial examination of the reasonableness of the settlement under
24  *Glover/Chausee*. On June 10, 2005, after submissions of voluminous written materials, taking
25  testimony, and hearing argument, Judge Cozza found the settlement reasonable and entered
26  the consent judgment.  It is undisputed USF&G participated in that determination.  Feature's

motion before the Court raises the question of whether another examination is necessary and appropriate here, what evidentiary effect in this case the state court's determination of reasonableness should have on USF&G, and whether USF&G's participation in the reasonableness hearing precludes its ability to launch a similar challenge in this forum.

Non-settling insurers, especially those who have reserved their right to contest coverage, who request to intervene in the reasonableness hearing are generally granted that request where it is indisputable the insurer has an interest in the outcome. Permitting the insurer to intervene in the case while all parties are in attendance and can present evidence on the issue in one hearing serves to promote judicial economy, reduce the risk of inconsistent rulings, and avoid piecemeal litigation. Moreover, the Washington Supreme Court has held that the state court judge presiding over the underlying litigation is in the proper position to decide the issue of reasonableness as to all interested parties. *Besel v. Viking Ins. Co.*, 146 Wash. 2d 730, 738, 49 P.3d 887 (2002). The Court is not aware of a single Washington case involving a stipulated judgment wherein a request by a non-defending insurer to intervene was denied, except in this case.[7]

USF&G filed a motion in state court pursuant to civil rule 24 (a) (intervention as a matter of right) requesting to intervene for the limited purpose of "presenting evidence and argument regarding the reasonableness of the settlement . . . ." Ct. Rec. 120, Ex. 2 at 19. The Court notes that Feature made the strategic decision to *oppose* the motion to intervene. In

---

[7]The Court notes that there are non-analogous cases from other jurisdictions where non-defending insurers who have denied coverage (as opposed to reserving their right to contest the matter) are not permitted to intervene in the procedure validating the stipulated judgment because such an insurer is said to have denied having an interest in the case. *See Mora v. Phoenix Indemnity Insurance Co.*, 996 P.2d 116 (Ariz. Ct. App. 1999), rev. den. (2000).

ORDER - 19

Judge Cozza's ruling, he denied USF&G's request to intervene as of right, he denied USF&G's request for discovery, yet granted USF&G the sole purpose of the motion to intervene – the right to be "an additional party at the ultimate reasonableness hearing." Ct. Rec. 120, Ex. 3 at 29.

The ruling on intervention occurred on May 10, and the reasonableness hearing took place the afternoon of June 10. On June 3, USF&G filed a 43 page brief. At the hearing, USF&G argued its position to the Court and was given the opportunity to cross-examine the witnesses called by Feature. However, USF&G did not have knowledge of the fact or names of the witnesses who were going to be called, and had not had the opportunity to depose or interview them. USF&G did not have the opportunity to conduct any additional discovery in anticipation of the reasonableness hearing, as the Court felt it was not "really going to add that much." Ct Rec. 120, Ex. 3 at 29. USF&G had not been provided copies of the exhibits to one of the declarations relied upon on the issue of damages. At the same time, USF&G was not a complete stranger to the underlying litigation and had on an ongoing basis for three years been provided documents and summaries, and had attended several mediations.

**G. Collateral Estoppel Does not Apply.** Feature's motion presently before the Court argues that this Court should give preclusive effect to the state court's determination of reasonableness in this case. The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute. Under the federal full faith and credit statute, "judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . ." 28 U.S.C. § 1738 (2007). Thus, federal courts must give preclusive effect to state court judgments, and the scope of the preclusive effect is governed by the law of the state from which the prior judgment emerged. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896, 79 L. Ed. 2d 56 (1984). This deference "promote[s] the comity between state

and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. at 95-96, 101 S. Ct. at 415 (*citing Younger v. Harris*, 401 U.S. 37, 43-45, 91 S. Ct. 746, 750-51, 27 L. Ed. 2d 669 (1971)). Thus, the preclusive effect of the Washington judgment and the scope of its preclusive effect, if any, is governed by the law of Washington.

The doctrines of res judicata and collateral estoppel are judicially created doctrines designed to protect litigants from the burden of retrying an identical cause of action or issue with the same party or privy, and to enhance judicial economy by prohibiting repetitive litigation when the procedures employed satisfy minimum standards of due process. See 28 U.S.C. § 1738 (1976). *See also McCurry*, 449 U.S. at 95-96 (1980); *Montana v. United States*, 440 U.S. 147, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). Under Washington law, the doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if the party estopped has already had a full and fair opportunity to present its case. *Hanson v. City of Snohomish*, 121 Wash. 2d 552, 561, 852 P.2d 295 (1993). The requirements for application of the doctrine are: (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice. *Id.* at 562, 852 P.2d 295.

In this case, Feature argues all four requirements are met and USF&G argues none are met. The same party requirement is typically easily determined, however, because of the state court's actions in regards to USF&G's motion intervene, the matter is debatable. Technically speaking, Judge Cozza's denial of USF&G's motion to intervene meant that USF&G was not a "party" at the reasonableness hearing. As a general rule, non-parties will not have had a full and fair opportunity to litigate the issues raised in the previous action, unless the non-parties were in privity with a prior party. However, "courts are no longer bound by rigid definitions

ORDER - 21

1    of the parties or their privies for the purposes of applying collateral estoppel or res

2    judicata."*Jackson v. Hayakawa*, 605 F.2d 1121, 1126 (9th Cir.1979).   On occasion courts

3    apply the doctrine where a non-party "had a sufficient interest and participated in the prior

4    action." *Id.*   For example, in leading case *Montana v. U. S.,* 440 U.S. 147, 99 S. Ct. 970

5    (1979), the Supreme Court determined that the United States, although not a party to the suit,

6    was a "laboring oar" in conducting the prior state litigation, particularly since it reviewed and

7    approved the complaints, paid the attorney's fees and costs, directed the appeal from the state

8    judgment, and appeared as amicus in the later proceedings. *Id.* at 155. Therefore, in a

9    subsequent federal suit regarding the same issue, the United States was bound by the state

10    court's resolution of the issue.   *Id.*

11       Unlike in *Montana*, although USF&G does have direct financial interest in the issue,

12    USF&G did not "assume control" over the underlying litigation.   The circumstances of this

13    case do not justify the imposition of collateral estoppel upon a non-party.   Judge Cozza's oral

14    ruling provides insight here.   First, he indicated that he understood the potential preclusive

15    effects his determination of reasonableness could have upon USF&G.  Ct. Rec. 120, Ex. 3 at

16    28.   Upon being requested to clarify his ruling by counsel, he explained his rationale for the

17    denial of USF&G's motion to intervene: "I am taking your statement that at some point you

18    are going to be added as an additional party.  I think that is the proper way to get you guys

19    into the case."  Ct. Rec. 120, Ex 3 at 29.  In effect, Judge Cozza was expressly limiting his

20    determination of reasonableness to the actual parties to the controversy and leaving USF&G

21    out while tacitly acknowledging that it would have the opportunity to fully and fairly litigate

22    at a later date.  *See e.g. Pacific Estates, Inc. v. Superior Court*, 13 Cal. App. 4th 1561, 1576,

23    17 Cal. Rptr. 2d 434 (Cal. App. 2 Dist. 1993) (holding it is expressly within the court's

24    discretion to limit its findings or the application of its good faith ruling).   Certainly, Judge

25    Cozza had the right to consider any evidence in determining reasonableness and it was not

26    unreasonable for the court to allow USF&G to make its position known to the court.

ORDER - 22

The extent of USF&G's participation at the hearing was not insignificant, yet this Court can not conclude that it constituted a "full and fair" opportunity to litigate this important and complex issue.    The injustice element of collateral estoppel is more firmly rooted in procedural unfairness, that is, whether the parties to the prior proceeding had a full and fair hearing on the issue. *Thompson v. Dep't of Licensing,* 138 Wash. 2d 783, 794, 982 P.2d 601 (1999).  The court's denial of USF&G's motion to intervene obviously limited the tools available to USF&G to litigate the matter.[8]  In addition, the court's denial of the opportunity to conduct discovery on the issue, the fact that USF&G was not provided copies all relevant pleadings, or made aware there was going to be witness testimony and the opportunity to cross-examine, causes this Court to conclude the state court's determination can not have preclusive effect upon USF&G here.  *See Rees v. Viking Insurance Co.*, 77 Wash. App. 716, at 719 892 P.2d 1128 (1995) (advising in dicta that the non-defending excess insurer would not be bound by the findings made at the reasonableness hearing).

**H.  Effect of the State Court's Reasonableness Determination.**    Although the settlement can not be deemed reasonable by collateral estoppel for purposes of this proceeding, the Court nevertheless finds that the state court's determination of reasonableness is certainly entitled to some evidentiary value in this case.  *See Pruyn v. Agricultural Ins. Co.*, 36 Cal. App. 4th 500, 42 Cal. Rptr. 2d 295 (Cal. App. 2 Dist. 1995) (court approval of stipulated settlement during good faith proceeding would satisfy the insured's prima facie burden in subsequent action against the insurer).  The Court notes Judge Cozza specifically considered each of the nine *Chaussee/Glover* factors in determining the reasonableness of the settlement.  Whereas USF&G had no duty to defend and there has otherwise been no proof of bad faith in this case, proof that the settlement was reasonable is an element of Feature's

---

[8]The Court notes that as a non-party, under the statute governing reasonableness hearings USF&G was not even entitled to notice of the hearing. R.C.W. 4.22.060(1).

prima facie case for recovery against USF&G. *See cf.*, *Truck Ins. Exchange v. Vanport Homes, Inc*., 147 Wash. 2d 751, 58 P.3d 276 (2002) (insurers acting in bad faith by refusing to defend are estopped from attacking the a court's reasonableness determination, except upon a showing that the settlement was a product of fraud or collusion). The Court finds the trial courts ruling provides presumptive evidence of the reasonableness of the settlement. Thus, Feature has satisfied its prima facie showing and the burden of establishing unreasonableness (or the related concepts of fraud, collusion, or bad faith) now rests with the insurer.

## IV. CONCLUSION

The body of law that has emerged which governs this action is confusing and unpredictable, and leaves insureds and third-party claimants with difficult choices. As the law on the validity and enforceability of no-personal-liability settlements evolves, the Court finds the following conclusion is consistent with the current state of the law, prudent and fair: An insurer who has issued a reservation of rights, who does not elect to participate in a stipulated judgment containing a covenant not to execute, and who is not otherwise in breach of any duty prior to the entry of the stipulated judgment, may not be bound by its terms until it has full and fair opportunity to challenge coverage and its reasonableness. The Court understands that reasonableness reviews in Washington entail the consideration of collusion, fraud, and possible impacts on non-parties and that they are intended to provide sufficient judicial oversight to permit enforcement of the stipulated judgment against a non-defending insurer – especially in the bad-faith scenario. However, the court's reasonableness decision can not be binding on the non-defending insurer who has validly elected not to defend, unless given the full and fair opportunity to participate in that determination. Unfortunately, USF&G was not given this opportunity and it should have been. Accordingly, the Court must deny Feature's motion. Accordingly,

**IT IS ORDERED** that Feature's Motion for Partial Summary Judgment Re: Reasonableness of Underlying Judgment, **Ct. Rec. 117**, is **DENIED.**

ORDER - 24

1        The District Court Executive is directed to file this Order and provide copies to

2    counsel.

3        **DATED** this 13th day of September, 2007.

4

5                                 s/ Wm. Fremming Nielsen

                                      WM. FREMMING NIELSEN

6    09-06                   SENIOR UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 25